No. 2-08-1061    Filed:  8-12-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JUDITH J. SNYDER, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 08--CH--802 |
| | ) | |
| ELLIOT HEIDELBERGER, | ) | |
| | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Kenneth L. Popejoy, |
| (Steven W. Snyder, Defendant). | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Judith J. Snyder, sued defendant attorney Elliot Heidelberger for malpractice in the drafting of a deed to real property that her late husband, Wilbert Snyder, allegedly intended to convey to her as his joint tenant. She also requested a constructive trust in order to prevent defendant Steven W. Snyder from dispossessing her via an action for forcible entry and detainer (735 ILCS 5/9--101 et seq. (West 2008)). Heidelberger moved to dismiss the malpractice count (see 735 ILCS 5/2--619 (West 2008)) on several bases, including as barred by the statute of repose (735 ILCS 5/13--214.3 (West 1994)). The trial court granted Heidelberger's motion, based solely on the claimed violation of the statute of repose. Plaintiff appeals (see 210 Ill. 2d R. 304(a)). We reverse and remand.

Plaintiff's two-count complaint, filed February 28, 2008, alleged the following facts. Plaintiff married Wilbert Snyder (Wilbert) on March 7, 1997. Since then, she had resided continuously at the

property at issue (the premises). On May 23, 1997, Wilbert retained Heidelberger to change either the legal title to, or the beneficial interest in, the premises. Wilbert, Heidelberger, and plaintiff intended to make Wilbert and plaintiff co-owners in joint tenancy with rights of survivorship. On May 23, 1997, Heidelberger prepared a quitclaim deed that, by its terms, conveyed title to the premises from Wilbert to Wilbert and plaintiff in joint tenancy. The next month, Heidelberger recorded the deed. Although the complaint did not so state, plaintiff later alleged that Heidelberger negligently failed to recognize that Wilbert did not hold title to the premises but merely held the beneficial interest in a land trust that did. Thus, she alleged, the quitclaim deed conveyed nothing to her.

The complaint continued as follows. On December 26, 2007, Wilbert died. On February 19, 2008, Steven W. Snyder (Steven), Wilbert's son and plaintiff's stepson, filed a forcible entry and detainer action against plaintiff. Plaintiff's complaint does not explain Steven's suit. However, a judgment of January 2, 2009,[1] granting Steven relief stated as follows. The quitclaim deed did nothing because title to the premises always had been, and still was, in the land trust. Thus, plaintiff never acquired any interest in the premises. On June 26, 1980, Wilbert amended the land trust agreement to provide that, when he died, the entire beneficial interest would go to Steven. Therefore, Steven was now entitled to possession of the premises. Count I of plaintiff's complaint, against Heidelberger for malpractice, alleged that plaintiff was a third-party beneficiary of the professional relationship between Heidelberger and Wilbert and that Heidelberger breached his duty

_____

[1] The judgment was entered after the trial court consolidated plaintiff's action with Steven's action.

of due care to plaintiff. Count II sought to impose a constructive trust on the premises, contending that Steven should not be unjustly enriched by Heidelberger's negligence.

Heidelberger moved to dismiss count I on several bases, including the statute of repose, which, in pertinent part, reads:

"(b) An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

(d) When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death ***." 735 ILCS 5/13--214.3 (West 1994).[2]

Heidelberger reasoned that, because the allegedly negligent act or omission occurred on May 23, 1997, subsection (b) of the statute barred any action filed after May 23, 2003.

In response, plaintiff relied on subsection (d)'s exception to the six-year rule. She contended that her injury occurred only after Wilbert died, which was less than two years before she filed her

---

[2]Although the statute was amended in 1995 by Public Act 89--7 (Pub. Act 89--7, §15, eff. March 9, 1995), that act was held unconstitutional in Best v. Taylor Machine Works, 179 Ill. 2d 367 (1997), and the statute thus reverted to its previous content. See Wackrow v. Niemi, 231 Ill. 2d 418, 423 n.3 (2008).

action. Plaintiff reasoned that only after Wilbert died did Steven obtain the beneficial interest in the premises and thus become able to exploit the quitclaim deed's failure to give plaintiff any interest in the premises. In reply, Heidelberger argued that plaintiff suffered her injury on May 23, 1997, when his allegedly defective drafting of the quitclaim deed denied her the property interest that otherwise would have been conveyed to her immediately. The trial court agreed, dismissed count I, and made the order immediately appealable (see 210 Ill. 2d R. 304(a)). Plaintiff timely appealed.

On appeal, plaintiff contends that the dismissal was improper because subsection (d) of the statute excludes this case from the six-year statute of repose. She argues that the case is controlled by Wackrow. For the reasons that follow, we agree with plaintiff.

We review de novo a dismissal under section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 2008)). Wackrow, 231 Ill. 2d at 422. A section 2--619 motion admits all well-pleaded facts, along with all reasonable inferences from those facts. Wackrow, 231 Ill. 2d at 422.

In Wackrow, the plaintiff's complaint alleged that, in March 1993, the defendant attorney prepared an amendment to a living trust for the plaintiff's brother, Woods. The amendment stated that, upon Woods's death, the trustee would convey the title to Woods's residence from Woods to the plaintiff.[3] However, the defendant did not realize that Woods did not hold the title to the property; the actual owner was a land trust. Woods died in August 2002, and, after his will was admitted to probate, the plaintiff made a claim against his estate for the property. The estate did not deliver the property. In October 2003, the probate court denied the plaintiff's claim. On December 27, 2004, the plaintiff sued the defendant for malpractice in drafting the amendment, alleging that

_____

[3]The amendment also provided that, if the property were sold before Woods died, he would give the plaintiff $300,000. This aspect of the amendment is not germane here.

he should have learned beforehand that Woods lacked the title to the property. Wackrow, 231 Ill. 2d at 420-21.

The defendant moved to dismiss the complaint as barred by the six-year statute of repose. The plaintiff responded that, under subsection (d), her injury did not occur until Woods died. The trial court dismissed the complaint, and the appellate court affirmed. The supreme court affirmed on a ground not pertinent here. Wackrow, 231 Ill. 2d at 428-29. However, the court held:

"[I]t is clear that the injury in this case did not occur until the death of Woods. Plaintiff alleges legal malpractice in the drafting of the amendment to Woods' trust. Because Woods could have revoked that amendment or changed the beneficiary prior to his death, the injury did not occur until Woods' death. Consequently, section 13--214.3(d) applies to plaintiff's claim." Wackrow, 231 Ill. 2d at 425.

Plaintiff contends that Wackrow controls this case, given the essential similarities in the allegations of the respective complaints. In each case, the defendant attorney drafted a document that was intended to transfer title to real property from the client to the plaintiff. However, the attorney negligently failed to realize that the client did not actually hold title to the property, but held only the beneficial interest in a land trust. Thus, the purported conveyance of title did nothing, and the intent of the client was frustrated. As a result, when the client died, the plaintiff was injured, because she received nothing. Plaintiff completes the equation by concluding that, just as the plaintiff in Wackrow suffered no injury until Woods died, she suffered no injury until Wilbert died. She reasons that, just as Woods could have revised the living trust by amending it to effectuate his true intent at any time before he died, Wilbert, at any time between May 23, 1997, and his death, could have conveyed to her the interest that he had intended her to receive.

Heidelberger attempts to distinguish this case from Wackrow by seizing on a difference in the clients' intentions. He observes that, in Wackrow, Woods intended to convey an interest in the property to the plaintiff only after he died, whereas here, Wilbert intended that plaintiff receive an interest in the property as soon as the quitclaim deed took effect. Thus, in Wackrow, the plaintiff could not have suffered any loss until Woods died, because, even had the attorney drafted a proper amendment, she would have obtained nothing until Woods died. Here, by contrast, had Heidelberger drafted a proper conveyance, plaintiff would have immediately obtained something--a share in either the title to the premises or the beneficial interest in the premises. Heidelberger concludes that the complaint's allegations establish that plaintiff suffered an injury immediately upon the signing (or at least the recording) of the quitclaim deed, because she was deprived of a benefit that a properly drafted document would have given her immediately, while Wilbert was alive.

We disagree with Heidelberger that this difference between the two cases means that they are distinguishable legally. The animating principle of the quoted passage from Wackrow is that, as long as the client who had intended to convey an interest to the plaintiff was still alive, the attorney's error could be remedied at any time, by the drafting of a deed or other conveyance that effectuated his intent. The problem with the defective amendment was simply that it failed to do something that the client had intended, and that failure could have been remedied by having the client "do something," which was possible at any time before he died. The same principle applies here. We believe that Heidelberger confuses the potential for an injury with an actual injury for which relief could be granted. See Fitch v. McDermott, Will & Emery, LLP, No. 2--09--0029, slip op. at 12-13 (April 28, 2010), pet. for leave to appeal pending, No. 110496 (no injury occurred until

the death of the testator, because the testator could have revoked or amended the will prior to his death, leaving the farm to the plaintiff).

Alternatively, the complaint here alleged two injuries. The first occurred when Heidelberger failed to presently transfer the initial interest in the property. By itself, that injury is distinguishable from the one in Wackrow and would be barred by the statute of repose, because the quitclaim deed was supposed to transfer an interest at the time of its execution. However, the complaint also alleged that Heidelberger failed to effectuate a transfer of the property to plaintiff upon Wilbert's death. This injury did not become choate until the death of the grantor, exactly as in Wackrow. The former injury was for an undivided half interest in the property, whereas the latter was for the entire interest in the property. Thus, though the former injury on its own was foreclosed, it was part and parcel of the surviving claim and was subsumed by the damages for the loss of the entire interest in the property, as of the date of Wilbert's death. Because plaintiff did not suffer her injury until after Wilbert died, subsection (b) of the statute of repose allowed her to file her action against defendant within two years after Wilbert's death. She did so. Therefore, the trial court erred in holding that the statute of repose barred count I of plaintiff's complaint, and we must reverse the order dismissing count I and remand the cause.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

JUSTICE JORGENSEN, specially concurring:

I agree with the majority conclusion to reverse the dismissal. The issue in this case is the application of section 13--214.3 (735 ILCS 5/13--214.3 (West 1994)). In turn the relevant inquiry is when, if at all, plaintiff suffered her injury.

I submit that plaintiff suffered multiple injuries as a result of the quitclaim deed executed on May 23, 1997. Plaintiff alleges that the deed was intended to give her an interest in the marital home, specifically claiming that the deed was intended to transfer a property interest from Wilbert to plaintiff and Wilbert as joint tenants. Thus, the quitclaim deed should have conveyed to her a one-half undivided interest when the deed was executed and should have conveyed to her Wilbert's one-half undivided interest upon his death. The failure of the deed to accomplish this created at least these two injuries. Defendant also notes that plaintiff was injured when she contributed to the payment of the mortgage on property in which she had no ownership interest. I do not disagree that monetary damage was yet another injury that resulted from the failure of the deed to convey the property as plaintiff alleges. However, the operative question remains: when did these injuries occur?

In Peterson v. Wallach, 314 Ill. App. 3d 823 (2000), the plaintiff, the sole beneficiary of her mother's estate, brought an action in 1998 alleging essentially that the defendant committed malpractice because he negligently rendered estate planning advice to the plaintiff's mother. Specifically, in 1989 Ardele, the plaintiff's mother, engaged the defendant's services to handle the administration of her husband's estate and to recommend estate planning procedures that would minimize death taxes on her estate and maximize the value of the assets that the plaintiff would receive upon Ardele's death. Ardele relied on the defendant's

advice and in 1990 and 1991 made substantial and taxable inter vivos gifts to the plaintiff. Upon Ardele's death, these gifts were added back into the estate for purposes of calculating death taxes, which were thereby increased in excess of $200,000. The injury argued on appeal was the increase in death taxes; however, the gifts made in reliance on the defendant's advice were taxable and arguably also an injury. The appellate court reversed the trial court's dismissal, finding that the exception to the statute of repose applied and that the action was not barred. The injury occurred upon the death of Ardele. "Accordingly, where any injury caused by the act or omission does not occur until the death of the person for whom professional services were rendered, section 13--214(d) is applicable regardless of whether the assets are subject to distribution through probate proceedings, an inter vivos trust, or some other mechanism." (Emphasis added.) Peterson, 314 Ill. App. 3d at 827.

As plaintiff here candidly admitted in the trial court, an injury occurred in 1997 when, as a result of the alleged negligence, the deed did not convey to her a one-half undivided interest in the marital residence. Any claim plaintiff may have had for this injury has long been extinguished by expiration of the statute of limitations and statute of repose. This is so, as defendant correctly argues, even though plaintiff may not have discovered the negligent acts until after the period of repose had elapsed. However, plaintiff could not sustain the injury of her loss of Wilbert's one-half undivided interest in the property until Wilbert's

death. Under the deed, his one-half undivided interest in the property could not pass to plaintiff until his death; thus, this injury occurred at Wilbert's death. Plaintiff has not changed her position from the trial court to appellate review.

The exception to the statute of repose is found in section 13--214.3(d), which provides: "When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death ***." 735 ILCS 5/13--214.3(d) (West 1994). Plaintiff has clearly alleged that the injury was caused by defendant's act or omission, that the failure of Wilbert's one-half undivided interest to pass to plaintiff upon his death did not occur until his death, and that the professional services were rendered for Wilbert. Plaintiff's action was commenced within two years of Wilbert's death. Thus the trial court erred in dismissing the complaint on the basis of the statute of repose.

In his petition for rehearing, defendant urges clarification on the issue of intent of the parties. I agree with the majority view that the issue of intent was not the basis for the trial court's oral findings nor was it included in the order from which this appeal is taken. On remand, the parties are not restricted on any issue other than the statute of repose.

JUSTICE O'MALLEY, dissenting:

The reader attempting to decipher the court's holding today faces an unnecessarily formidable challenge for several reasons, not least of which is that Justice McLaren's "majority" opinion does not actually represent a majority view. The three judges on this panel have devised three answers

to the pivotal question of when the injury here occurred: (1) it occurred at the time the instruments were to go into effect, and not after; (2) it occurred at the time of the grantor's death, and not before; and (3) there were injuries both at the time the instruments were to go into effect and at the time of the grantor's death. Justice McLaren espouses the second theory, but he also (inconsistently, as I discuss below) relies on the third theory. In her special concurrence, Justice Jorgensen relies on the third theory, to the exclusion of the other two. I follow the first theory only. Thus, counting Justice McLaren's dual vote, this panel has two votes for the third theory and one each for the remaining theories. Elementary math teaches that the third theory represents the majority view. Elementary logic teaches that, since Justice Jorgensen espouses the third theory in her "special concurrence," her special concurrence actually represents the majority opinion of this court. The reason her opinion is cast as a special concurrence, while Justice McLaren's is misleadingly cast with the imprimatur of a majority, escapes me completely, and I can only hope that readers will be more careful than my colleagues in ascertaining what holding has garnered two votes from this panel.

This court's opinion is also unduly confusing because Justice McLaren's "majority" is in tension with itself. Justice McLaren reasons that "as long as the client who had intended to convey an interest *** was still alive, the attorney's error could be remedied at any time" and thus there was no "actual injury for which relief could be granted" until the grantor's death. Slip op. at 6. Justice McLaren further explains that he "disagree[s]" that this case and Wackrow "are distinguishable legally" and asserts that the "principle" from Wackrow "applies here." Slip op. at 6. However, just after so stating, Justice McLaren abruptly and completely changes direction on both points and holds "[a]lternatively" that plaintiff was in fact injured at the time of the attempted transfer and that that injury "is distinguishable from the one in Wackrow." Slip op. at 7 ("The first [injury] occurred when

Heidelberger failed to presently transfer the initial interest in the property. By itself, that injury is distinguishable from the one in <u>Wackrow</u>"). Before ending, Justice McLaren changes course once more and explains that "plaintiff did not suffer her injury until after [the grantor] died." Slip op. at 7. Justice McLaren's opinion thus reflects an uneasy compromise between two irreconcilable views: the view that <u>Wackrow</u> dictates that plaintiff's injury did not occur at any time before the grantor's death, and the view that plaintiff suffered an injury both before and at the time of the grantor's death. Justice McLaren's "alternative" holding--that <u>Wackrow</u> does not limit the time of the injury only to the time of the grantor's death--comes after his opinion devoted entirely to the premise that <u>Wackrow</u> does so limit the time of the injury, and it comes without any supporting legal analysis. Thus, the "alternative" adjunct to Justice McLaren's opinion is a bewildering incongruity.

Further, the "alternative" adjunct does nothing to cure the confusion that will result from Justice McLaren's opinion's being presented as a majority. Justice McLaren's stated reasoning centers on his reading of <u>Wackrow</u>--a reading that both Justice Jorgensen and I disavow. However, since Justice McLaren's opinion is presented as a majority, and since the only reasoning it contains is its discussion of <u>Wackrow</u>, most readers will incorrectly interpret his treatment of <u>Wackrow</u> as the view of this court. Because Justice Jorgensen and I disagree with that reading, however, it is not the view of this court. Again, Justice Jorgensen should have written the majority opinion, with Justice McLaren specially concurring and me dissenting. Structured as it is, with the majority view stated in a special concurrence and a minority view stated in the majority, this opinion undermines the very purpose for its publication in the first place: to provide clear guidance on important points of law.

In any event, regardless of what a majority of this court has held, I disagree with both theories articulated by Justices McLaren and Jorgensen. I begin with Justice McLaren's theory, based on his reading of Wackrow, that no injury occurred until the time of the grantor's death. As Heidelberger argues in his petition for rehearing, Justice McLaren fundamentally misinterprets Wackrow. In Wackrow, the defendant attorney attempted to draft a living trust amendment to provide that, upon his death, certain property would be transferred to the plaintiff. The supreme court held that the injury to the plaintiff did not occur until the death of the grantor "[b]ecause [the grantor] could have revoked [the grant] or changed the beneficiary prior to his death." Wackrow, 231 Ill. 2d at 425. Justice McLaren reasons that the "animating principle of the quoted passage from Wackrow is that, as long as the [grantor] *** was still alive, the [initial] error could be remedied at any time, by the drafting of a deed or other conveyance that effectuated his intent." Slip op. at 6. To the contrary, I (and Justice Jorgensen) read Wackrow to stand for the principle that the injury to the plaintiff there did not occur until the grantor's death because the plaintiff was not supposed to gain any interest until the grantor's death, not because the time of death ended any chance of remedying the error in the attempted transfer. As I see it, the supreme court's reference to the grantor's changing or revoking the grant was an illustration of the fact that the plaintiff's interest was not to be triggered until the grantor's death and thus could be changed before it became effective. Thus, the principle I take from Wackrow is that a plaintiff in this situation is injured at the moment his or her interest was supposed to have been transferred but was not.

The difference between this case and Wackrow, and the reason I now dissent, is the timing of the attempted transfer of the interest. In this case, unlike Wackrow, the interest was supposed to transfer immediately, not upon some later event such as the death of the grantor. Since plaintiff's

injury occurred as soon as the interest was supposed to transfer, and since the interest was supposed to transfer immediately upon completion of the deed, plaintiff's injury occurred on the date the deed was completed but the interest not actually transferred. I agree with Heidelberger that the injury here occurred when the defective deed was executed but no interest was transferred to plaintiff.

Justice McLaren instead identifies the date of the grantor's death as the date of the injury. For this proposition, he relies on the idea that the date of the grantor's death was the date after which the error in the deed could no longer be corrected. His reliance on this idea is largely based on what I explain above is a misreading of Wackrow. However, Wackrow notwithstanding, the fact that the deed could have been fixed at any time before the grantor died does not affect the timing of plaintiff's injury in the first place. Indeed, any number of negligent actions can be remedied to mitigate or obviate the injury they caused, but that does not change the date of the injury. Further, as Heidelberger observes in his petition for rehearing, under Justice McLaren's rule that an injury does not occur until after the last date a deed could have been corrected, there can never be an injury in a case involving a failed transfer of real estate so long as the grantor remains living and retains ownership of the property, because the grantor could potentially execute a corrected deed at any time. This cannot be the law.

In her "special concurrence" (actually the majority view, since the same holding is also tacked into Justice McLaren's opinion), Justice Jorgensen relies on the idea that there were two injuries: one on the date of the attempted transfer, and one on the date of the grantor's death when plaintiff's interest should have matured into full ownership of the property. (By so reasoning, Justice Jorgensen repudiates Justice McLaren's theory that Wackrow dictates no injury occurred until the time of the grantor's death.) I disagree with this view as well. The fact that plaintiff's interest did not grow into

full ownership is not a separate injury--it is a consequence of the underlying injury caused by the failure to convey her interest to her in the first place.

In short, I think plaintiff was injured at the first moment she should have acquired an interest in the property but did not: the moment the failed conveyance to her was executed. The death of the grantor foreclosed the possibility that that injury could be fixed, and it marked the date on which the interest she should have acquired would have appreciated into full ownership. However, the death of the grantor did not create a new injury. Because the time allotted under the statute of repose expired between the date of the real injury and the date plaintiff filed her lawsuit, I would affirm the trial court's decision to grant Heidelberger's motion to dismiss.