# ILLINOIS OFFICIAL REPORTS

---

**Snyder v. Heidelberger, 2011 IL 111052**

---

| | |
|---|---|
| Caption in Supreme Court: | JUDITH J. SNYDER, Appellee, v. ELLIOT HEIDELBERGER, Appellant. |
| Docket No. | 111052 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The limitations and repose provisions concerning legal malpractice provide that an action must be brought within two years of the time at which the plaintiff knew or reasonably should have known of the injury, but no more than six years after the act or omission complained of, except where the injury does not occur until the death of the person for whom professional services were rendered, in which case suit may be brought within two years of the demise; and where plaintiff widow, who expected to take the marital premises by virtue of her right of survivorship in a joint tenancy, discovered, on the 2007 death of her husband, that the property was claimed by her stepson, who sought to remove her from the premises, where defendant attorney had been retained by the husband in 1997 to place the premises in joint tenancy and drafted and filed a deed purporting to do so, but it was discovered after the husband's death that title to the property had not been in his name individually, but in the name of a trustee of a land trust whose terms provided that the sole beneficial interest would go to the stepson upon the husband's death, where, in 2008, the plaintiff brought a legal malpractice action against the defendant which was dismissed as filed beyond the statute of repose, but the appellate court reversed, the supreme court affirmed the circuit court, holding that the plaintiff's injury did not occur upon her husband's death when she failed to take a survivor's interest, but in 1997 when the negligent drafting of the deed failed to create a joint tenancy; and the two-year exception for an injury occurring at the death of a client was not applicable. |

| Decision Under Review | Appeal from the Appellate Court for the Second District, reported at 403 Ill. App. 3d 974; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Kenneth L. Popejoy, Judge, presiding. |
|---|---|
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |
| Counsel on Appeal | Patricia L. Argentati and Shana A. O'Grady, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellant.<br><br>Timothy J. Klein, of Bloomingdale, for appellee. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion.<br>Chief Justice Kilbride and Justices Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.<br>Justice Freeman dissented, with opinion. |

## OPINION

¶ 1    Plaintiff, Judith Snyder, filed suit in the circuit court of Du Page County against defendant, attorney Elliot Heidelberger, for legal malpractice, alleging that defendant negligently prepared a quitclaim deed that failed to convey certain real estate to plaintiff and her husband, Wilbert, as joint tenants with right of survivorship. After Wilbert died, plaintiff discovered that, prior to the date of the alleged malpractice, legal title to the property was held by a trustee in a land trust and not by Wilbert individually and, that upon Wilbert's death, the sole beneficial interest in the land trust went to Steven Snyder, Wilbert's son and plaintiff's stepson. The circuit court granted defendant's motion to dismiss count I of plaintiff's complaint on the ground that the statute of repose had expired. A divided appellate court reversed and remanded. 403 Ill. App. 3d 974.

### BACKGROUND

¶ 2    On February 28, 2008, plaintiff filed her two-count complaint. Count I alleged legal malpractice as to defendant. Count II of the complaint, against Steven Snyder, asked for imposition of a constructive trust upon the premises.

¶ 3    In her complaint, plaintiff alleged that on or about May 23, 1997, Wilbert retained defendant to prepare a quitclaim deed conveying property comprising the couple's marital home, of which Wilbert was the sole owner, into the names of plaintiff and Wilbert as joint tenants. Defendant prepared the deed and it was executed and recorded. Wilbert died in December 2007. Thereafter, Steven Snyder commenced an action in forcible entry and detainer seeking to remove plaintiff from the property, claiming that he was entitled to possession of the property. Plaintiff alleged that defendant knew that Wilbert intended plaintiff to primarily benefit from defendant's representation of Wilbert. Thus, plaintiff alleged, she was a third-party beneficiary of the professional relationship between defendant and Wilbert. She further alleged that, relying on their ownership interests, she and Wilbert had granted a mortgage to a bank and had made payments on the mortgage. Plaintiff alleged that defendant breached his duty to her to (1) exercise a reasonable degree of skill and care in determining the true owner of the property prior to preparing any documents of conveyance; (2) prepare the appropriate documentation for legal title to be conveyed to plaintiff and Wilbert as joint tenants; and (3) not permit plaintiff and Wilbert to be subjected to adverse claims for possession and ownership of the property.

¶ 4    Defendant filed a motion to dismiss count I of the complaint under section 2–619 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619 (West 2008)), alleging, *inter alia*, that plaintiff's suit was barred by the six-year statute of repose applicable to legal malpractice actions (735 ILCS 5/13–214.3(c) (West 1994)).

¶ 5    At the hearing on defendant's motion to dismiss, defendant argued that the injury occurred at the time the quitclaim deed was prepared and the six-year statute of repose therefore applied. Plaintiff urged the circuit court to find that the injury occurred upon the death of Wilbert and that her action was timely filed under subsection (d) of the legal malpractice statute (735 ILCS 5/13–214.3(d) (West 1994)), which, *inter alia*, permits the filing of an action within two years of the death of the person for whom the legal services were rendered. The circuit court rejected plaintiff's argument and entered an order on October 14, 2008, dismissing count I of plaintiff's complaint with prejudice on the ground that plaintiff's action was not timely filed. The court made a finding under Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)), and plaintiff appealed.

¶ 6    The appellate court reversed the circuit court's judgment and remanded for further proceedings. The appellate majority found that subsection (d) of the legal malpractice statute applied and that because plaintiff filed her action within two years of Wilbert's death, her complaint was filed within the applicable limitations period. The dissenting justice concluded that the injury took place when the allegedly negligent act occurred and thus the six-year statute of repose in subsection (c) of the statute applied to bar plaintiff's claim.

¶ 7    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

## ANALYSIS

¶ 8    A motion for involuntary dismissal under section 2–619 admits all well-pleaded facts and reasonable inferences therefrom. The motion should be granted only if the plaintiff can prove

no set of facts that would support a cause of action. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). When ruling on a section 2–619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). This court reviews *de novo* a section 2–619 order of dismissal. *Id.*

¶ 9   Section 13–214.3 of the Code sets forth the limitations and repose period applicable to actions for legal malpractice. It states, in relevant part, as follows:

"(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

(d) When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975." 735 ILCS 5/13–214.3(b), (c), (d) (West 1994).

¶ 10   The statute of limitations set forth in section 13–214.2(b) incorporates the "discovery rule," which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury. *Hester v. Diaz*, 346 Ill. App. 3d 550, 553 (2004). The purpose of a statute of repose like the one found in section 13–214.3(c) operates to curtail the "long tail" of liability that may result from the discovery rule. *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill. App. 3d 706, 708 (2002). A statute of repose begins to run when a specific event occurs, regardless of whether an action has accrued. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). Thus, a statute of repose is not tied to the existence of any injury, but rather it extinguishes liability after a fixed period of time. *Id.* The statute of repose applicable in the case at bar prohibits the commencement of an action more than six years "after the date on which the act or omission occurred." 735 ILCS 5/13–214.3(c) (West 1994).

¶ 11   With these principles in mind, we now address the parties' arguments.

¶ 12   Defendant argues that the injury in this case was sustained when the alleged negligent act occurred, not when Wilbert died. Thus, subsection (d) of the statute does not apply and the six-year repose period of subsection (c) expired prior to the commencement of plaintiff's action. Although plaintiff concedes that an injury did occur at the time the deed was prepared, she argues that an additional injury occurred when Wilbert died, and it is this last injury that determines when the limitations period began to run. Plaintiff argues this court's

decision in *Wackrow v. Niemi*, 231 Ill. 2d 418 (2008), controls this case. There, the defendant attorney prepared an amendment to a living trust by which the client, James Woods, would give to his sister, the plaintiff, his residence or, if the residence was sold prior to his death, the sum of $300,000. After Woods died, the plaintiff made a claim against his estate for the property. The circuit court denied the claim because the property was owned, not by Woods individually, but by a land trust. Long after the time for filing claims in Woods' estate had expired, the plaintiff filed suit against the attorney, alleging that he failed to exercise reasonable care to determine the actual owner of the property prior to preparing the trust amendment. The circuit court granted the attorney's section 2–619 motion to dismiss on the basis that the suit was barred because it was not filed within the time required by section 13–214.3(d) of the Code. The appellate court affirmed. *Wackrow*, 231 Ill. 2d at 421.

¶ 13    Citing its prior decision in *Petersen v. Wallach*, 198 Ill. 2d 439 (2002), this court noted in *Wackrow* that application of subsection (d) of the legal malpractice statute turns on whether the injury occurred upon the death of the client. Noting that the *Wackrow* plaintiff alleged legal malpractice in the drafting of the amendment to Woods' trust, this court stated that "[b]ecause Woods could have revoked that amendment or changed the beneficiary prior to his death, the injury did not occur until Woods' death. Consequently, section 13–214.3(d) applies to plaintiff's claim." *Wackrow*, 231 Ill. 2d at 425. The *Wackrow* plaintiff argued that she was a third-party beneficiary and that because the attorney rendered services for her as well as for Woods and she was still alive, section 13–214.3(d) did not apply. She argued that the injury occurred when her claim against Woods' estate was denied. This court rejected the plaintiff's argument, noting that subsection (d) looks to the death of the person for whom the professional services were rendered. Since Woods was that person, subsection (d) applied to the plaintiff's claim and her suit was time-barred. *Id.* at 425-26.

¶ 14    In arguing that *Wackrow* supports her argument that the injury in this case occurred on the death of Wilbert, plaintiff emphasizes our statement in *Wackrow* that "[b]ecause Woods could have revoked [the trust] amendment or changed the beneficiary prior to his death, the injury did not occur until Woods' death." Plaintiff notes that Wilbert could have corrected defendant's alleged error at any time prior to his death and she argues the inability to correct an error is the "touchstone" for understanding when the injury occurred in this case. However, plaintiff overlooks a fundamental difference between this case and *Wackrow*. Here, the services rendered to Wilbert were intended to have an immediate benefit during Wilbert's lifetime. Had Wilbert held legal title to the premises, the joint tenancy deed drafted by defendant would have conveyed a one-half undivided interest to plaintiff, thus entitling her to possession and enjoyment of the premises. A joint tenancy is a present estate in all the joint tenants, with each joint tenant being " 'seized of the whole.' " *Harms v. Sprague*, 105 Ill. 2d 215, 224 (1984) (quoting *Partridge v. Berliner*, 325 Ill. 253, 257 (1927)). Like other property owners, a joint tenant may convey his or her interest in the property without the knowledge or consent of the other joint tenant, thereby severing the joint tenancy. *Sathoff v. Sutterer*, 373 Ill. App. 3d 795, 797 (2007). An inherent feature of a joint tenancy is the right of survivorship, which is the right of the last surviving joint tenant to take the whole of the estate. *Id.* The surviving joint tenant does not take the share of the deceased joint tenant as a successor, but by rights under the conveyance that created the joint tenancy. *In re Estate*

*of Alpert*, 95 Ill. 2d 377, 381 (1983). The right of survivorship is thus a present interest that is created by the conveyance of the property into joint tenancy. Accordingly, the failure of the deed drafted by defendant here to create a joint tenancy in Wilbert and plaintiff caused a present injury that occurred at the time the quitclaim deed was prepared.

¶ 15    In contrast, the trust amendment in *Wackrow* was intended to take effect, not during Woods' lifetime, but only upon his death. Up until that time, the plaintiff was to receive nothing and there was no injury while Woods was alive. Woods could have revoked the trust amendment or modified it at any time prior to his death. The sole injury occurred when Woods died and the trust amendment became operative. It is in this context that this court observed that Woods could have revoked the amendment or changed the beneficiary prior to his death. To accept plaintiff's construction of the legal malpractice statute would mean that the limitations period would not begin to run in any case until the client died and the error could no longer be corrected. This would eviscerate the statute of repose.

¶ 16    Plaintiff also argues that there can be more than one injury for statute of limitations purposes. However, she does not cite any authority in support of this argument. In fact, counsel for both parties stated at oral argument that, despite extensive research, they had been unable to find any case so holding. We note that section 13–214.3(d) applies when "*the* injury caused by the act or omission *does not occur* until the death of the person for whom the professional services were rendered." (Emphases added.) 735 ILCS 5/13–214.3(d) (West 1994). In construing a statute, our primary objective is to give effect to the intent of the legislature. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The most reliable indicator of that intent is the statutory language itself, which must be given its plain and ordinary meaning. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229 (2008). When the statutory language is clear, we must apply it as written, without resort to extrinsic aids of statutory construction. We may not depart from the plain meaning of a statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Blum*, 235 Ill. 2d at 29. The interpretation of a statute is a question of law subject to *de novo* review. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002).

¶ 17    The use of the phrase "the injury" in the passage quoted above indicates the legislature contemplated that only a singular injury would trigger application of the limitations period in subsection (d). Had the legislature wished to recognize more than one injury or the last in a series of injuries, it could have done so. Further supporting our interpretation is the fact that subsection (d) applies only when the injury occurs upon the death of the client. This section, then, does not apply when the injury occurs prior to the client's death. Thus, based upon the plain language of the statute, we reject plaintiff's argument that a second injury occurred when, after Wilbert's death, plaintiff did not receive ownership of the entire interest in the property as the surviving joint tenant. At most, this event was an outgrowth or consequence of the injury caused by the failure of the quitclaim deed to convey the property to Wilbert and plaintiff as joint tenants. Since the injury in this case occurred at the time the deed was prepared and executed, the two-year limitations period contained in subsection (b) of the statute applies. However, because plaintiff did not file her malpractice action until more than 10 years later, the 6-year statute of repose set forth in subsection (c) bars her claim.

¶ 18    The period of repose in a legal malpractice case begins to run on the last date on which

the attorney performs the work involved in the alleged negligence. *Carlen v. First State Bank of Beecher City*, 367 Ill. App. 3d 1051, 1056 (2006); *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 96 (2005). Here, the record shows the last act of defendant's representation of Wilbert in this matter took place on June 25, 1997, when defendant mailed the original recorded quitclaim deed to Wilbert. Thus, the statute of repose expired several years before plaintiff filed her malpractice action. Accordingly, the circuit court properly granted defendant's motion to dismiss count I of plaintiff's complaint as time-barred.

¶ 19    The parties have presented additional arguments in this case concerning plaintiff's claimed status as a third-party beneficiary of defendant's legal representation of Wilbert. In light of our disposition of the case, we need not address those arguments.

CONCLUSION

¶ 20    For the reasons stated, we hold that the circuit court did not err in granting defendant's section 2–619 motion to dismiss count I of the complaint on grounds that the statute of repose barred plaintiff's action. We therefore reverse the appellate court's judgment and affirm the judgment of the circuit court.

¶ 21    Appellate court judgment reversed;

¶ 22    circuit court judgment affirmed.

¶ 23    JUSTICE FREEMAN, dissenting:

¶ 24    I cannot join in today's decision because it is inconsistent with this court's previous case law concerning injury in legal malpractice cases. In reaching its decision, the court also overlooks well-settled principles concerning the application of the discovery rule in such cases. The result is a decision that protects negligent attorneys. I therefore dissent.

¶ 25    Given the procedural posture of the case, the facts are not open to dispute. Judith filed her two-count complaint against Heidelberger on February 28, 2008. Count I, sounding in attorney malpractice, alleges that on May 23, 1997, Judith's husband, Wilbert, retained Heidelberger "to cause legal title to (or the beneficial interest in) certain real property then owned by (or under the power of direction of) Wilbert" who intended that he and Judith "become joint owners, as joint tenants with rights of survivorship" to the property at issue in this case. The complaint further alleges that Heidelberger failed to use a reasonable degree of skill and care in determining the true owners of the property in preparing the documents of conveyance "as he was retained to do." The allegations further reveal that, in response to Wilbert's "request" Heidelberger prepared a quitclaim deed for Wilbert to sign on May 23, 1997. The document was recorded on June 6, 1997. The complaint states that a mortgage for the property in the names of both Wilbert and Judith was issued in 2006.

¶ 26    Wilbert died on December 26, 2007. In February 2008, Wilbert's son, Steven, commenced an eviction action against Judith, his stepmother. Judith then discovered that the property had been held in a land trust since 1972. In 1980, Wilbert amended the succession of his beneficial interest in the event of his death, naming Steven as the successor. As a

-7-

result, Judith was ultimately evicted from the home that she had shared with Wilbert before his death. Judith sought monetary damages for, amongst other things, having to defend the forcible entry action brought against her.

¶ 27 Heidelberger moved to dismiss the complaint, arguing, *inter alia*, that the malpractice action was time-barred under section 13–214.3 of the Code of Civil Procedure. According to Heidelberger, Judith's injury occurred on May 23, 1997, and as such, fell outside the six-year period of repose set forth in the statute.

¶ 28 A motion for involuntary dismissal brought under section 2–619 (735 ILCS 5/2–619 (West 1994)) admits the legal sufficiency of the complaint, but asserts the existence of some other affirmative matter, such as a statute of limitations bar, that avoids or defeats the claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "The purpose of a section 2–619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). In ruling on such a motion, all pleadings and supporting documents must be considered in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). Review is *de novo*. *Id.*

¶ 29 As noted, Heidelberger claimed Judith's attorney malpractice action was time-barred. The statute of limitations for a legal malpractice action is set forth in section 13–214.3 of the Code, which provides that an action against an attorney arising out of an act or omission in the performance of professional services must be commenced within two years from the time the person bringing the cause of action knew or reasonably should have known of the injury for which damages are sought. Except in limited circumstances, no action may be commenced more than six years after the date on which the act or the omission occurred. 735 ILCS 5/13–214.3(c) (West 1994).

¶ 30 The limited circumstances mentioned above are set forth in subsection (d) of section 13–214.3:

"When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period ***." 735 ILCS 5/13–214.3(d) (West 1994).

As we recently emphasized in *Wackrow v. Niemi*, when this exception is triggered, its provisions apply to the action "*instead of* the two-year statute of limitations and the six-year statute of repose." (Emphasis in original.) *Wackrow v. Niemi*, 231 Ill. 2d 418, 427 (2008); see also *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002) (characterizing subsection (d) as an exception to the six-year repose period for cases where the injury does not occur until after the death of the "person for whom the professional services were rendered"). Thus, the resolution of this appeal turns on when Judith was injured by Heidelberger's negligence.

¶ 31 The court's analysis of this issue gets off-track when it fails to acknowledge that the "injury" in a legal malpractice action is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission. *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999). See also *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005) (same). As we unanimously explained as recently as 2005,

"For purposes of a legal malpractice action, a client is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages. [Citation.] The fact that the attorney may have breached his duty of care is not, in itself, sufficient to sustain the client's cause of action. Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. [Citation.] The existence of actual damages is therefore essential to a viable cause of action for legal malpractice. [Citation.]

In a legal malpractice action, actual damages are never presumed. [Citation.] Such damages must be affirmatively established by the aggrieved client. [Citation.] Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed. [Citation.]

Making that demonstration requires more than supposition or conjecture. Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists." *Id.* at 306-07.

¶ 32    Today's holding flatly contradicts this longstanding precedent. The court states that Judith suffered her injury on May 23, 1997, the day Heidelberger negligently executed the conveyance document. But, on that date, Judith did not suffer any pecuniary injury; there was only the mere possibility that she would incur damages as a result of the negligence.

¶ 33    By fixing the date of injury as it does, the court is essentially holding that, in cases such as this, the third-party beneficiary would have to sue within six years of the date of the negligent execution of documents. Here, that means Judith would have had to bring suit against Heidelberger on or before May 23, 2003. At that time, however, Wilbert was still alive, and was presumably able to bring his own malpractice suit against Heidelberger for failing to carry out his express wishes. Wilbert also would have been able to correct Heidelberger's error in drafting at the same time. On the other hand, Judith, on that date, would have suffered no pecuniary injury and would not have even been able to state a cause of action for legal malpractice.[1] It thus appears that only Wilbert would have been able to state a viable claim for legal malpractice on May 23, 1997.

¶ 34    Moreover, left unclear from today's decision is how either Judith or Wilbert would have discovered Heidelberger's negligence on or before that date. Given that Wilbert had held a 100% beneficial interest in the land trust, no one would have been able to file an eviction action against Judith since she lived there with Wilbert, with his blessing. Certainly, Wilbert or Judith could have had a title search done on the property to ensure that Heidelberger had properly followed Wilbert's instructions. Wilbert could even have hired a second lawyer to

---

[1]To state a claim for legal malpractice under Illinois law a plaintiff must allege the following elements: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney, (2) a negligent act or omission constituting a breach of that duty, (3) proximate cause of injury, and (4) actual damages. See *Sexton v. Smith*, 112 Ill. 2d 187, 193 (1986); *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 368 (2007).

look over Heidelberger's work. But lay people seeking legal advice from Illinois lawyers should not have to do this in order to protect themselves from malpractice, a point I have had occasion to make before. See *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 90 (1995) (Freeman, J., dissenting, joined by Bilandic, C.J.). Yet, that is the only way that either Judith or Wilbert would have been able to discover that Heidelberger had injured Judith on May 23, 1997, and brought suit in timely fashion under the court's ruling. This is an absurd result that has no support in Illinois law.

¶ 35    Indeed, until today, Illinois courts did not require that clients take such drastic steps to protect themselves from negligent lawyers. In fact, under the discovery rule, the two-year period does not necessarily begin the day the plaintiff suffers her injury; rather "[i]t is 'the realized injury to the client, not the attorney's misapplication of the expertise, which marks the point for measuring compliance with a statute of limitations period.' " *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 690 (1995) (quoting *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 90 (1995) (Freeman, J., dissenting, joined by Bilandic, C.J.); see also *Romano v. Morrisroe*, 326 Ill. App. 3d 26, 28, 31 (2001) (holding that it is "when plaintiff knows or should know facts that would cause him to believe that his injury was wrongfully caused" "not the attorney's misapplication of his legal expertise, that marks the point for measuring compliance with a statute of limitations"); *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC,* 387 Ill. App. 3d 933, 940 (2009) (same). Until now, these principles of attorney malpractice jurisprudence have been fairly settled. Today's decision, however, calls them into question.

¶ 36    The court's opinion also has other unfortunate consequences on Illinois attorney malpractice law. It bears mention that, at one point in time in Illinois, plaintiffs such as Judith could not sue attorneys like Heidelberger because she was not Heidelberger's client and, thus, Heidelberger owed no duty toward her. This was often referred to as the rule of privity. See *Pelham v. Griesheimer*, 92 Ill. 2d 13, 19 (1982) (acknowledging " 'general rule is that the obligation of the attorney is to his client and not to a third party' " (quoting *National Savings Bank of the District of Columbia v. Ward*, 100 U.S. 195, 200 (1880)).

¶ 37    In *Pelham v. Griesheimer*, this court, noting the general trend away of privity restrictions in tort, broke with the general rule and established the guidelines for the recognition of an attorney malpractice case brought by someone other than the client. In order for a nonclient to succeed in a negligence action against the attorney, she must

> "prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party. Under such proof, recovery may be allowed, provided that the other elements of a negligence cause of action can be proved. Comment, *Liability of Lawyers to Third Parties for Professional Negligence in Oregon*, 60 Or. L. Rev. 375 (1981)." *Id.* at 21.

The court in *Pelham* acknowledged the increased willingness of courts around the nation to relax the rule of privity and "to extend an attorney's duty to nonclients in cases in which the attorney's representation of his client has essentially been of a nonadversarial nature, such as drafting wills for the benefit of intended beneficiaries thereunder." *Id.* at 22. Pointedly, the court made clear that although a third party may ultimately benefit from the representation,

the "key" focus "is the attorney's acting at the direction of or on behalf of the client to benefit or influence a third party. (Probert & Hendricks, *Lawyer Malpractice: Duty Relationships Beyond Contract*, 55 Notre Dame Law. 708, 728 (1980).)" *Id.* at 21.

¶ 38    The court's determination today that the injury occurred on the day the negligence occurred frustrates the very reasons for the relaxation of the privity rule, *i.e.*, to provide a remedy to those third parties injured by an attorney's negligence in the estate planning of another. In such cases, it is almost certain that any negligence on the part of the attorney will only be discovered after the client's death, when the injury becomes apparent and, more importantly, can no longer be remedied by the client, who has passed away. Our decision in *Petersen*, which recognized that subsection (d) created an exception to the repose period in cases where the injury did not occur until after the death of the person for whom the legal services were rendered (*Petersen*, 198 Ill. 2d at 445), served to prevent sections 13–214.3(b) and 13–214.3(c) from creating a *de facto* bar to estate planning legal malpractice that thwarts the relaxation of the privity rule. Today's decision thus works to counter the legislature's intent that these types of injuries be brought within the time periods set forth in subsection (d).

¶ 39    Rather than embrace an analysis that is inconsistent with Illinois case law and produces not just absurd, but unjust, results, I submit that the better approach in this case is to acknowledge the fact that while Wilbert was alive, Judith's suffered no injury as a result of Heidelberger's negligence. This result is not only dictated by case law such as *Eastman* and *Landau*, but by logic as well. Had Heidelberger's negligence been discovered before Wilbert's death, Wilbert would have been able to change the beneficial and successor interests in the land trust at any time before he died. Judith's injury became complete on the date Wilbert was no longer alive to take the steps necessary to correct Heidelberger's negligence and she became susceptible to a forcible entry and detainer action. Her pecuniary losses are thus easily quantified: attorney fees and costs in defending the eviction action, the loss of her beneficial and successor interests in the land trust, and the expenses incurred in having to move and find new housing.

¶ 40    Our decision in *Wackrow v. Niemi* supports this conclusion. *Wackrow* stands for the notion that, as long as the client who had intended to convey the interest to the plaintiff was still alive, the attorney's error could be fixed by the drafting of a proper conveyance that effectuated the client's intent. *Wackrow*, 231 Ill. 2d at 420-21. My colleagues distinguish *Wackrow* by holding that, unlike the plaintiff in *Wackrow*, Judith suffered an injury immediately because "the services rendered to Wilbert were intended to have an immediate benefit during Wilbert's lifetime." *Supra* ¶ 14. Because the deed failed to convey the interest Wilbert intended, Judith was deprived of her entitlement to "possession and enjoyment of the premises." *Id.*[2] According to my colleagues, "the failure of the deed drafted [by

---

[2]In the course of its analysis of Judith's "immediate injury," the court engages in a discussion of joint tenancy law. *Supra* ¶ 14. It is unclear to me what bearing joint tenancy principles have in this case since the parties do not dispute that no joint tenancy with the right of survivorship was ever created. The more pertinent question is when Judith sustained an actionable injury.

Heidelberger] to create a joint tenancy in Wilbert [and Judith] caused a present injury that occurred at the time the quitclaim deed was prepared." *Id*. As I have demonstrated, however, that is not the kind of "injury" contemplated by law in a legal malpractice action. Judith suffered no pecuniary loss as a result of Heidelberger's negligence on that date. On May 23, 1997, Judith suffered only the possibility of harm. Under *Landau*, this is not a cognizable injury for purposes of legal malpractice. *Landau*, 216 Ill. 2d at 306. It was only after Wilbert's death that Judith suffered actual pecuniary damages as the result of Heidelberger's negligence.

¶ 41　　The court implies that to hold as I would hold would "eviscerate the statue of repose." *Id*. at 7. This is simply incorrect. In enacting subsection (d) of the statute, our General Assembly has crafted an exception to the six-year statute of repose for cases such as this where the injury does not occur until after the death of the "person for whom the professional services were rendered." 735 ILCS 5/13–214.3(d) (West 1994); *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002) (holding that under subsection (d), a plaintiff "has two years to file a claim unless letters of office are issued or the will is admitted to probate"). Here, that person for whom the professional services were rendered was Wilbert. Thus, subsection (d) of the statute gives Judith two years from the date of Wilbert's death to file suit. Wilbert died in December 2007, and Judith filed suit two months later in February 2008. Her suit was therefore timely filed. In fact, it was the operation of subsection (d) in *Wackrow* that prevented the plaintiff there from going forward since she filed her claim outside the six-month period applicable to contesting a will in probate. See *Wackrow*, 231 Ill. 2d at 428. This was so even though the plaintiff was injured on the date of the client's death. I submit it is our decision in *Wackrow* that properly interprets the statutes of limitations and repose contained in section 13–214.3 and not that of the court today.

¶ 42　　The result reached in this case harms not just Judith, but those like her in the future who are injured by negligent attorneys under similar circumstances. As part of this court's rulemaking authority, it has taken steps to protect the public from incompetent attorneys by instituting mandatory continuing legal education for all licensed to practice in this state. Ill. S. Ct. R. 791 (eff. Sept. 29, 2005).[3] While such programs are laudable, the true test of a court's ability to protect those from legal malpractice lies in its willingness to provide a forum for redress for those claiming damages from negligent practice in civil law. Today's decision is remarkable in that it (I) fails to define "injury" consistently with our previous case law, (ii) fails to apply the settled principles concerning the application of the discovery rule to legal malpractice, and (iii) fails to give effect to the legislature's exception to the statute

---

[3]The preamble to the rule states:

　　"The public contemplates that attorneys will maintain certain standards of professional competence throughout their careers in the practice of law. The following rules regarding Minimum Continuing Legal Education are intended to assure that those attorneys licensed to practice law in Illinois remain current regarding the requisite knowledge and skills necessary to fulfill the professional responsibilities and obligations of their respective practices and thereby improve the standards of the profession in general." Minimum Continuing Legal Education Rules, Preamble (eff. Sept. 25, 2005).

of repose. Indeed, its treatment of the statute of repose contradicts that found in earlier decisions of this court, such as *Petersen* and *Wackrow*, thereby calling into question whether those decisions remain good law. These shortcomings, unfortunately, may cause the cynical reader to wonder if the court, made up as it is of lawyers, is merely "protecting its own" and thus make programs like mandatory continuing legal education appear as mere window-dressing.