2015 IL App (1st) 143105

THIRD DIVISION
August 12, 2015

No. 1-14-3105

JEROME S. LAMET,                                        )                Appeal from the

                                                        )                Circuit Court of

              Plaintiff-Appellant,             )                Cook County, Illinois.

v.                                              )

                                                        )                No. 2011 L 013986

ELLIS B. LEVIN d/b/a ELLIS B. LEVIN    )

ATTORNEY AT LAW,                    )                Honorable

                                                          )                John P. Callahan, Jr.,

              Defendant-Appellee.           )                Judge Presiding.

JUSTICE MASON delivered the judgment of the court, with opinion.
Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1      In 1994, Jerome Lamet, a lawyer admitted to the Illinois bar in 1955, retained Ellis Levin, admitted to the Illinois bar in 1973, to represent him in a dispute with his landlord over $34,000 that the landlord claimed Lamet owed. Lamet "paid" Levin for his services primarily by giving Levin free rent in the space Lamet leased. Levin represented Lamet for the next 17 years through dismissals of the landlord's suit for want of prosecution and for failure to exercise due diligence in effecting service on Lamet. Levin steadfastly pursued defenses and counterclaims, which Lamet claims to have learned in 2011 were without merit. Having been forced to settle the landlord's claim by paying $150,000 in 2011, Lamet sued Levin for legal malpractice, essentially asserting that Levin should have advised him in 1994 to accede to his landlord's demands and forgo defense of the lawsuit. We affirm the circuit court's dismissal of Lamet's malpractice claim as time-barred.

¶ 2                                      BACKGROUND

¶ 3                              The Underlying Lawsuits

¶ 4        Lamet leased office space for his legal practice from LaSalle National Trust. On December 17, 1993, LaSalle brought suit against Lamet, seeking roughly $34,000 in unpaid rent. Lamet was originally represented by Donna Richman, an attorney in Lamet's firm. Levin filed a substitute appearance for Lamet on June 13, 1994.

¶ 5        Levin raised counterclaims and defenses based on two factual allegations that were erroneous. First, Levin claimed that Lamet was being overcharged for his rental of Suite 201, alleging that rent was calculated based on 3000 square feet when the suite actually measured 2007 square feet. In fact, in May 1994, before Levin undertook Lamet's representation, architects hired by LaSalle and Lamet each calculated the square footage of the office suite. LaSalle's architect found that the suite contained 3,194 rentable square feet, while Lamet's architect found that the suite contained 2,738.7 rentable square feet. Lamet's architect reported his findings in a letter sent to Richman at Lamet's firm dated May 23, 1994. Second, Levin claimed that Lamet and another tenant were simultaneously being billed for use of Suite 203. This claim was determined to be unfounded in the course of the litigation.

¶ 6        The 1993 litigation was dismissed for want of prosecution on April 17, 1998. On December 17, 2002, LaSalle refiled its lawsuit against Lamet, increasing its request for damages to $50,597.67. Levin continued to represent Lamet. The two of them came to an agreement whereby Lamet allowed Levin to lease office space rent-free in exchange for his representation.

¶ 7        On March 3, 2004, Levin moved to dismiss the complaint on the basis that LaSalle failed to exercise due diligence in obtaining service on Lamet. The trial court granted the motion and dismissed the complaint. On appeal, this court reversed, noting that Levin had "strategically manipulated" extensions so that his motion would not be heard until after the expiration of the statute of limitations on LaSalle's claim.

¶ 8        After the case was reinstated, Levin raised several affirmative defenses on Lamet's behalf.  He contended that LaSalle lacked standing to sue Lamet and that LaSalle's suit was time-barred.  Levin also repeated his allegation that Lamet was being charged for more square feet than was actually occupied by his firm.  Additionally, at a pretrial conference, Levin resurrected the claim that Lamet and another tenant were simultaneously being billed for use of Suite 203.

¶ 9        Sometime in 2011, Lamet asked attorney Mary Baker to assist Levin in his defense.  Baker conducted an independent review of the case's merits and discovered in August 2011 that the claims and defenses set forth by Levin were "likely indefensible."  Lamet then retained the law firm of Robbins, Salomon & Patt, which determined that Lamet never had any legitimate counterclaims or defenses to either the 1993 litigation or the 2002 litigation.  Lamet settled the 2002 action for $150,000 on December 9, 2011.

¶ 10                                    The Present Action

¶ 11        On December 29, 2011, Lamet filed his initial legal malpractice complaint against Levin, which he later amended four times.  In his fourth amended complaint, Lamet alleged that Levin knew or should have known that the counterclaims and defenses that he raised in both the 1993 and the 2002 litigation were meritless.  In particular, Levin should have known that Lamet was not being charged for more square feet than he was actually renting, based upon the May 23, 1994 letter from Lamet's architect to Richman.  Lamet acknowledged that this letter was sent before Levin began representing him, but he argued that Levin should have been aware of it, since Levin's billing records indicated that in 1994, he spent 2.5 hours discussing the case with Richman and 7.5 hours reviewing the case file, talking with prior counsel, and talking with

Lamet. According to Lamet, Levin's unfounded counterclaims and defenses unnecessarily extended the lawsuits, raising costs and fees for all parties involved.

¶ 12    Levin filed a motion to dismiss Lamet's fourth amended complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), contending that Lamet's claims were time-barred under the two-year statute of limitations and the six-year statute of repose applicable to legal malpractice claims (735 ILCS 5/13-214.3(b), (c) (West 2012)). Levin argued that Lamet knew or should have known about the allegedly meritless defenses in 1995, when they were originally filed. Levin also averred that Lamet "controlled, directed, and authorized" the litigation strategy he employed throughout the 2002 litigation, and Levin did not take action without Lamet's direction and approval.

¶ 13    In response to Levin's motion to dismiss, Lamet argued, among other things, that he did not discover his injury until 2011, when his new counsel informed him of Levin's negligence. In support, Lamet attached an affidavit stating that although he has been an attorney for 40 years, his practice mostly relates to counseling seniors and disabled people on debt issues. Because he is rarely involved in litigation, he relied solely upon Levin's advice in litigating the 1993 and 2002 lawsuits. Although Lamet discussed the lawsuits with Levin, he did not control, direct, or authorize Levin's strategy.

¶ 14    On September 10, 2014, the trial court granted Levin's section 2-619 motion and dismissed Lamet's complaint in its entirety, finding that Lamet's claims were "well beyond" both the period of limitations and the period of repose. Lamet now appeals.

¶ 15                                ANALYSIS

¶ 16    Section 13-214.3 of the Code of Civil Procedure provides that a legal malpractice action "must be commenced within 2 years from the time the person bringing the action knew or

reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2012). Additionally, such an action "may not be commenced in any event more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(c) (West 2012).

¶ 17    Lamet contends that the trial court erred in finding that his claims were time-barred for three reasons. First, he argues that the statute of repose did not begin to run until the last date on which Levin performed his alleged acts of negligence, which was in 2011. Second, he argues that the statute of limitations did not begin to run until he retained new counsel in 2011 and discovered Levin's negligence. Third, he argues that the statutes of limitations and repose are tolled by Levin's fraudulent concealment of the cause of action, notwithstanding the fact that Lamet did not allege in his complaint that Levin performed any acts of concealment. We review the trial court's grant of a section 2-619 motion to dismiss *de novo*. *Krilich v. American National Bank & Trust Co.*, 334 Ill. App. 3d 563, 569 (2002).

¶ 18                                Statute of Repose

¶ 19    Lamet first argues that the statute of repose did not begin to run until the last date on which Levin performed his alleged acts of negligence, *i.e.*, June 10, 2011, when Levin filed his final version of Lamet's affirmative defenses in the 2002 litigation. Levin, on the other hand, argues that Lamet's entire action is predicated on Levin's failure to recognize and advise him in 1994 that he had no legitimate defenses, and all of Lamet's claimed damages flow from that initial malpractice. Accordingly, the date of that initial malpractice marks the beginning of the period of repose.

¶ 20    We agree with Levin. The statute of repose in a legal malpractice case begins to run as soon as an event giving rise to the malpractice claim occurs, regardless of whether plaintiff's

injury has yet been realized. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 639 (2010). Illinois courts have consistently held that the statute of repose is not tolled merely by the continuation of the attorney-client relationship. *Id.* at 640 (citing *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544 (1995)); see *Hester v. Diaz*, 346 Ill. App. 3d 550 (2004); *Serafin v. Seith*, 284 Ill. App. 3d 577 (1996). Rather, " 'where there is a single overt act from which subsequent damages may flow, the statute [of repose] begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.' " *Mauer*, 401 Ill. App. 3d at 642 (quoting *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 279 (2003)). Moreover, the period of repose is not tolled by the attorney's ongoing duty to correct past mistakes. *Fricka v. Bauer*, 309 Ill. App. 3d 82, 84 (1999).

¶ 21        *Hester*, 346 Ill. App. 3d 550, illustrates the application of these principles. The *Hester* plaintiff retained the defendants to represent her in connection with a workers' compensation claim. *Id.* at 551. In 1994, defendants failed to appear at a hearing and the case was dismissed for want of prosecution. *Id.* Defendants filed a motion to reinstate the case, which was continued to December 3, 1996, but defendants failed to appear on that date as well. *Id.* at 552. Despite the fact that defendants' alleged negligence continued through 1996, the *Hester* court found that the statute of repose began to run in 1994, when plaintiff's claim was initially dismissed. *Id.* at 554. It explained: "Malpractice occurred at that time when the case was allowed to be dismissed for want of prosecution. While there was case activity both within and without the workers' compensation file after that date, that activity does not change the status of the case, which was 'dismissed.' " *Id.* at 554-55.

¶ 22        Similarly, in *Mauer*, defendants represented plaintiff in his divorce. *Mauer*, 401 Ill. App. 3d at 633. In 2001, defendants drafted a marital settlement agreement which was incorporated

into the judgment for dissolution of marriage. *Id.* at 634. But the agreement was defective in that it inadvertently assigned the plaintiff more than his share of liabilities. *Id.* at 635. When defendants discovered this error, they filed a postjudgment "motion to correct" in 2002, which they later withdrew in 2005. *Id.* In spite of this postjudgment activity, the *Mauer* court held that the statute of repose began to run in 2001, when the defective agreement was incorporated into the dissolution judgment. *Id.* at 644-45. The court reasoned that the judgment was a "final event" triggering the start of the period of repose, notwithstanding the defendants' ongoing duty to correct their error. *Id.* at 645-46.

¶ 23    The present case is analogous to *Mauer* and *Hester*. Lamet claims that in 1994, when he first retained Levin as his lawyer, Levin should have informed him that he had no legitimate defenses to his landlord's action to collect unpaid rent. In his brief, Lamet states, "The operative fact is that Lamet had no defenses, claims or remedies when the 1993 Litigation commenced. Levin knew or reasonably should have known this ***." Since Lamet's action is premised upon Levin's failure to properly advise him in 1994, that is when the statute of repose began to run, notwithstanding Levin's later failure to correct that omission. See *id*. at 646 (citing *Fricka*, 309 Ill. App. 3d at 84 (ongoing duty to correct does not delay beginning of period of repose)). Thus, Lamet's suit, filed 17 years after that alleged initial malpractice, is well beyond the six-year period of repose. 735 ILCS 5/13-214.3(c) (West 2012).

¶ 24    The sole case that Lamet cites in favor of his position is *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 18, in which the court stated that "[t]he period of repose in a legal malpractice case begins to run on the last date on which the attorney performs the work involved in the alleged negligence." But the *Snyder* court did not purport to overrule *Mauer* and *Hester* (nor could it have), and when its statement is viewed in context, it is not at odds with the holding of either of

those cases. The alleged malpractice in *Snyder* occurred in a transactional context. Plaintiff's husband retained the defendant attorney to prepare a deed conveying the marital home to plaintiff and her husband as joint tenants with right of survivorship. *Id.* ¶ 1. Defendant prepared the deed and sent it to plaintiff's husband, but the deed was defective. *Id.* ¶ 3. Defendant's mistake was not discovered until 10 years later, when plaintiff's husband died and plaintiff found that she did not have title to the marital home. *Id.* Plaintiff then brought a legal malpractice suit against the defendant. Under these facts, the *Snyder* court found that plaintiff's suit was time-barred. It explained that the period of repose began when defendant sent the defective deed to plaintiff's husband, since delivery of the final work product to the client was the relevant last act of representation involved in the malpractice; the statute was not tolled by plaintiff's failure to discover her injury until years later. *Id.* ¶ 18.

¶ 25    It is therefore apparent that the proposition cited by Lamet in this case was not being used in *Snyder* to extend the period of repose. On the contrary, it was used to show that the *Snyder* plaintiff's suit was clearly past the period of repose. The *Snyder* defendant's delivery of the defective deed was a "single overt act from which subsequent damages may flow" (*Feltmeier*, 207 Ill. 2d at 279), thus triggering the start of the period of repose. More generally, in a transactional context, the "overt act" at issue will typically be the date upon which the transaction is executed and the negligence is complete. By contrast, in a litigation context, an attorney can perform negligently even before the litigation is final and the representation has ended. Levin's alleged negligence falls into this category; as discussed, Lamet's primary contention is that Levin acted negligently in 1994 by failing to advise him of his lack of any meritorious defenses and in filing pleadings asserting defenses and counterclaims that were not

well-founded in fact. That conduct first occurred in 1994. Accordingly, we find that Lamet's suit is time-barred by the six-year statute of repose for legal malpractice actions.

¶ 26                                 Statute of Limitations

¶ 27        Lamet's next contention is that the statute of limitations did not begin to run until 2011, when he retained new counsel and discovered for the first time that Levin's claims on his behalf were without merit. See 735 ILCS 5/13-214.3(b) (West 2012) (statute of limitations begins to run when plaintiff "knew or reasonably should have known" of his injury).

¶ 28        Because we have already found that Lamet's suit is time-barred under the statute of repose, we need not address this argument. Nevertheless, we point out that Lamet knew or should have known since 1994 that any defense based on a claim that the actual square footage of the leasehold was substantially overstated was factually unfounded. On May 23, 1994, prior to Levin's appearance in the underlying case, an architect hired by Lamet sent a letter addressed to Richman at Lamet's office, in which he calculated the actual square footage of the office. Lamet argues that this letter was sufficient to put Levin on notice that his square footage argument was meritless. But, by the same token, the letter should have put Lamet on notice that the argument was meritless, or at least prompted further inquiry on his part. This is particularly true since Lamet is a lawyer, not a layperson who is presumptively unable to discern malpractice as it occurs. *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 923 (1998). We find disingenuous Lamet's claim that his nonlitigation practice precluded him from recognizing that assertion of this defense was not well-founded. Accordingly, the record establishes that Lamet knew or should have known of the lack of merit in this defense well over two years before he filed suit.

¶ 29                                 Fraudulent Concealment

¶ 30    Lamet's final argument is that the statutes of repose and limitations are tolled because Levin fraudulently concealed his cause of action from him. Although Lamet admits that he did not allege any acts of fraudulent concealment in his complaint, he argues that Levin, as his lawyer, had an affirmative obligation to inform him of his potential malpractice claim. This argument is without merit.

¶ 31    Section 13-215 of the Code of Civil Procedure, the fraudulent concealment statute, provides as follows:

> "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2012).

See also *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 44 ("Under the fraudulent concealment doctrine, the statute of limitations will be tolled if the plaintiff pleads and proves that fraud prevented discovery of a cause of action.").

¶ 32    A plaintiff alleging fraudulent concealment must generally show affirmative acts by the defendant that are designed to prevent the discovery of the action. *Clay v. Kuhl*, 189 Ill. 2d 603, 613 (2000) (rejecting fraudulent concealment claim where plaintiff did not allege that defendant attempted to conceal her cause of action from her). Lamet argues that this rule does not apply where there is an attorney-client relationship between the parties. In support, he cites *DeLuna v. Burciaga*, 223 Ill. 2d 49, 77 (2006), for the proposition that as a fiduciary, an attorney has a "duty to disclose material *facts* concerning the existence of a cause of action." (Emphasis added.) See also *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500 (1996) ("In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material

*fact* when he was under a duty to disclose that fact to plaintiff." (Emphasis added)). But Lamet does not allege that Levin failed to disclose any material facts to him. Whether Levin's conduct was negligent is not a *fact*; rather, it is an opinion or a legal conclusion that might or might not be drawn from the facts. This court has rejected the notion that a lawyer has an affirmative obligation to advise a client of the grounds to sue him for legal malpractice. *Carlson*, 2015 IL App (1st) 140526, ¶ 45; see also *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1025 (2010) ("We similarly find no case that would require an attorney to affirmatively advise his client of his negligence and the statute of limitations for suing him.").

¶ 33    *DeLuna* is readily distinguishable. In *DeLuna*, plaintiffs sufficiently pled fraudulent concealment where they alleged that their attorney actively misled them by telling them that their underlying lawsuit was going well when it had actually been dismissed. *DeLuna*, 223 Ill. 2d at 79-81. As noted, Lamet does not allege any such concealment of material facts. On the contrary, Lamet knew or should have known since 1994 that Levin's square footage argument was factually unsupported. See *Mauer*, 401 Ill. App. 3d at 649 (courts will not apply the doctrine of fraudulent concealment to toll the statute of repose if plaintiff had actual knowledge of his cause of action within the statutory time frame (citing *Witt*, 269 Ill. App. 3d at 544)). Accordingly, Lamet cannot avail himself of the five-year statute of limitations in the fraudulent concealment statute (735 ILCS 5/13-215 (West 2012)).

¶ 34                                    Levin's Request for Sanctions

¶ 35    Finally, Levin contends that Lamet's claims relating to the 1993 litigation were clearly time-barred, and Lamet's arguments to the contrary were "not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R.

375(b) (eff. Feb. 1, 1994). Levin therefore asks this court to impose sanctions pursuant to Rule 375.

¶ 36    We decline to impose sanctions for Lamet's pursuit of this appeal. Notwithstanding our conclusion that Lamet's malpractice claim is time-barred, Levin managed to forestall the landlord's ability to collect past due rent from Lamet for over 17 years by advancing factually unfounded claims and engaging in litigation tactics designed to delay. The irony in Levin's righteous indignation over Lamet's pursuit of this appeal is not lost on us. Under the circumstances, we deem it best to leave the parties where we find them.

¶ 37                        CONCLUSION

¶ 38    The trial court did not err in finding that Lamet's claims of legal malpractice relating to both the 1993 litigation and the 2002 litigation were time-barred by the two-year statute of limitations and the six-year statute of repose. Accordingly, we affirm.

¶ 39    Affirmed.