# Illinois Official Reports

## Appellate Court

---

### *Doyle v. Hood*, 2018 IL App (2d) 171041

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL A. DOYLE, as Trustee of the Patricia A. O'Malley Supplemental Trust, Plaintiff-Appellant, v. THOMAS B. HOOD and THOMAS B. HOOD LAW OFFICES, P.C., Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-1041 |
| Filed | September 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 17-L-308; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brian R. Holman and Dennis H. Stefanowicz Jr., of Holman & Stefanowicz, LLC, of Chicago, for appellant.<br><br>Daniel F. Konicek, Michael P. Hannigan, and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellees. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Michael A. Doyle, as trustee of the Patricia A. O'Malley Supplemental Trust (Supplemental Trust), sued defendants, Thomas B. Hood and Thomas B. Hood Law Offices, P.C., alleging legal malpractice in connection with defendants' preparation of the living trust of his father, Harry G. Doyle Jr. (through which the Supplemental Trust, a special-needs trust, was created), and his will. Defendants moved to dismiss Michael's complaint, alleging that it was time-barred under the special repose period in section 13-214.3(d) of the Code of Civil Procedure (Code) (735 ILCS 5/13-214.3(d) (West 2016)). The trial court granted the motion and dismissed the complaint with prejudice. Michael appeals. We affirm.

¶ 2                                            I. BACKGROUND

¶ 3     In 2011, Harry retained defendants to prepare documents in connection with an estate plan for him and, according to Michael, his wife, Patricia A. O'Malley. (Patricia suffered from Alzheimer's disease.) Defendants prepared the Harry G. Doyle Jr. Revocable Living Trust (Living Trust) and Harry's will. On December 15, 2011, Harry executed the two documents.

¶ 4     The Living Trust established the Supplemental Trust, with Patricia as its beneficiary. The Living Trust provided that Patricia

> "has a disability which substantially impairs her ability to provide for her own financial and support needs. As a result of said disability, [Patricia] will have the right to receive certain benefits from public programs. Continued full access to the benefits of these programs is essential to meet [Patricia's] needs for basic maintenance, support services and medical care. At that same time, these programs may leave gaps in basic services, many provide adequately [*sic*] in emergencies, and may not provide for needs, wants and opportunities beyond basic necessities."

The document further provided:

> "It is the intent of the Grantor that the Trust assets are to be used to supplement and never supplant benefits of public programs, and that no distribution be made from this trust that would disqualify [Patricia] from receiving the benefits of public programs or that would reduce the level of such benefits. It is expressly provided that no payment should in any way jeopardize a Medicaid payment for care of any type including the care provided in a nursing home facility."

¶ 5     The Supplemental Trust was intended for Patricia to receive funds while retaining her eligibility for certain federal or state means-tested benefit programs. It was revocable by Harry during his lifetime and is irrevocable as to Patricia and her assigns. The Supplemental Trust will terminate upon Patricia's death.

¶ 6     On January 14, 2012, Harry died. Upon his death, Michael became the trustee of the Living Trust and the Supplemental Trust and the assets in the Living Trust were distributed to the Supplemental Trust. Also upon Harry's death, Michael became the executor of Harry's will.

¶ 7     On March 15, 2012, defendants filed Harry's will with the clerk of the circuit court of Lake County (case No. 12-W-312). No letters of office were issued, and Harry's will was not admitted to probate.

¶ 8     In late 2013, Patricia was admitted into a long-term-care facility in Wheeling. On July 22, 2014, an application for long-term-care benefits under the Aid to the Aged, Blind, or Disabled

program (305 ILCS 5/3-1 *et seq.* (West 2012)) was filed on Patricia's behalf, requesting that her benefits begin as of April 1, 2014.

¶ 9    On February 25, 2016, according to Michael, the Department of Human Services (DHS) issued a decision, finding that, as of April 1, 2014, the Supplemental Trust contained $238,437.67 to pay for Patricia's long-term care.[1] The DHS subtracted Patricia's asset allowance of $2000 from the $238,437.67 and imposed a spend-down of the remaining $236,437.67.

¶ 10    On May 4, 2016, an appeal was filed with the DHS on Patricia's behalf. On August 26, 2016, the DHS issued its final administrative decision (which was confirmed by an analyst recommendation on September 1, 2016, by the Department of Heathcare and Family Services), finding that, instead of requiring a spend-down, the assets held by Harry and transferred upon his death resulted in a penalty to Patricia, who "did not receive fair market value" for the assets.[2] The penalty was assessed at $234,561. Patricia's application for long-term-care benefits was approved subject to payment of the penalty from the funds in the Supplemental Trust.

¶ 11    On May 1, 2017, Michael, as trustee of the Supplemental Trust, sued defendants, alleging professional negligence. In a first amended complaint, he alleged that defendants breached the duties they owed to Harry during their attorney-client relationship, in that they created the Supplemental Trust through the Living Trust, failed to create the Supplemental Trust through Harry's will, failed to prepare the necessary estate-planning documents to maximize funds available for Patricia's care and maintenance, and failed to exercise reasonable and ordinary care and diligence in preparing Harry's and Patricia's estate plan. Michael claimed that, had defendants created the Supplemental Trust through the will, as opposed to the Living Trust, the transfer of the funds from the Living Trust to the Supplemental Trust upon Harry's death would have been exempt and no penalty would have been imposed. 42 U.S.C. §§ 1382b(e)(2)(A), 1396p(d)(2)(A)(ii) (2012); 89 Ill. Adm. Code 120.347(c) (2013).

¶ 12    On October 5, 2017, defendants moved to dismiss Michael's complaint. 735 ILCS 5/2-619, 13-214.3(d) (West 2016). They argued that the claim was time-barred and that Patricia's disability had no bearing on the application of the statute of repose. Defendants' position was that the injury occurred upon Harry's death, in 2012, and that Michael's complaint, filed in 2017, was beyond the two-year repose period in section 13-214.3(d). They noted that the complaint alleged that the attorney-client relationship was between *Harry* and defendants. As to Patricia's condition, defendants argued that the tolling provisions of subsections (e) and (f) of section 13-214.3 did not apply, because she was a beneficiary of the Supplemental Trust and the provisions apply only to persons entitled to bring an action, which, here, was plaintiff as the trustee. 735 ILCS 5/13-214.3(e), (f) (West 2016). Further, subsection (f), by its own terms, did not toll or avoid the repose period in subsection (d).

¶ 13    On November 28, 2017, the trial court granted defendants' motion and dismissed Michael's complaint with prejudice.[3] Michael appeals.

---

[1]The document is not contained in the record on appeal.

[2]This document is also not contained in the record on appeal.

[3]The record on appeal does not contain a transcript of the hearing or a bystander's report.

## II. ANALYSIS

Michael argues that the trial court erred in dismissing his complaint as time-barred. For the following reasons, we disagree.

A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997). All pleadings and supporting documents are interpreted in the light most favorable to the nonmoving party. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008). We review *de novo* a trial court's ruling on a section 2-619 motion to dismiss. *Id.*

To prevail on a legal-malpractice claim, a plaintiff must plead and prove that (1) the defendant attorneys owed the plaintiff a duty of due care arising from the attorney-client relationship, (2) the defendants breached that duty, and (3) as a direct and proximate result of that breach, the plaintiff suffered injury. *Sexton v. Smith*, 112 Ill. 2d 187, 193 (1986).

Section 13-214.3 of the Code contains the limitations and repose periods for actions for legal malpractice. Addressing these concepts in a general sense, the supreme court has explained:

> "In contrast to a statute of limitations, which determines the time within which a lawsuit may be brought after a cause of action has accrued, a statute of repose extinguishes the action after a defined period of time, regardless of when the action accrued. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 61 (2006) (citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001)). It begins to run when a specific event occurs, 'regardless of whether an action has accrued or whether any injury has resulted.' *Ferguson*, 202 Ill. 2d at 311. Thus, the statute of repose limit is ' "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." ' *CTS Corp. v. Waldburger*, 573 U.S. ___, ___, 134 S. Ct. 2175, 2182-83 (2014) (quoting 54 C.J.S. *Limitations of Actions* § 7, at 24 (2010)). The purpose of a repose period is to terminate the possibility of liability after a defined period of time. After the expiration of the repose period, there is no longer a recognized right of action. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 16." *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 33.

Turning to the statutory framework at issue here, section 13-214.3 of the Code states, in relevant part:

> "(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.
>
> (c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.
>
> (d) When the injury caused by the act or omission does not occur until *the death of the person for whom the professional services were rendered*, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate

or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975.

(e) If the person entitled to bring the action is under the age of majority or under other legal disability at the time the cause of action accrues, the period of limitations shall not begin to run until majority is attained or the disability is removed.

(f) If the person entitled to bring an action described in this Section is not under a legal disability at the time the cause of action accrues, but becomes under a legal disability before the period of limitations otherwise runs, the period of limitations is stayed until the disability is removed. This subsection (f) does not invalidate any statute of repose provisions contained in this Section." (Emphasis added.) 735 ILCS 5/13-214.3(b)-(f) (West 2016).

¶ 20    The limitations period in section 13-214.3(b) "incorporates the 'discovery rule,' which serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury." *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 10.

¶ 21    The six-year repose period in section 13-214.3(c) "begins to run as soon as an event giving rise to the malpractice claim occurs, regardless of whether plaintiff's injury has yet been realized." *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 20. "A statute of repose is not tolled by the discovery rule." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 16. Nor is it tolled merely by the continuation of the attorney-client relationship. *Mauer v. Rubin*, 401 Ill. App. 3d 630, 640 (2010). The repose period in subsection (c) "does not run from an 'injury,' but rather from an act or omission." *Terra Foundation for American Art v. DLA Piper LLP (US)*, 2016 IL App (1st) 153285, ¶ 44. A statute of repose "gives effect to a policy different from that advanced by a statute of limitations; it is intended to terminate the possibility of liability after a defined period of time." *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001).

¶ 22    Section 13-214.3(d) contains a special two-year repose period (and was the primary basis upon which defendants here moved to dismiss), which is an exception to subsections (b) and (c). *DeLuna*, 223 Ill. 2d at 74. It applies when the *injury* caused by the malpractice occurs upon the *client's death*. 735 ILCS 5/13-214.3(d) (West 2016); *Wackrow*, 231 Ill. 2d at 424; see also *Terra Foundation*, 2016 IL App (1st) 153285, ¶ 44. Under section 13-214.3(d), if no letters of office are issued and no will is admitted to probate, the action must be filed within two years of the client's death. 735 ILCS 5/13-214.3(d) (West 2016).

"Section 13-214.3(d) *** create[s] an exception to the six-year repose period for attorney malpractice actions where the alleged injury does not occur until the death of the person for whom professional services were rendered. However, that exception is not *in addition to* the two-year statute of limitations and the six-year statute of repose. Rather, the exception applies *instead of* the two-year statute of limitations and the six-year statute of repose. As the appellate court in *Poullette* [*v. Silverstein*, 328 Ill. App. 3d 791 (2002),] correctly held, '[n]othing in the statute conditions the application of subsection (d) on whether the repose period in subsection (c) has expired.' *Poullette*, 328 Ill. App. 3d at 795." (Emphases in original.) *Wackrow*, 231 Ill. 2d at 427.

The section 13-214.3(d) "exception may shorten the limitation period for legal malpractice complaints and may mean that a plaintiff's action is barred before [he or] she learns of [his or] her injury. However, the fact that a repose provision 'may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence.' " *Id.* (quoting *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 424 (1986)).

¶ 23    Michael argues that the repose period in subsection (d) does not apply here and that, instead, subsection (c) applies. He contends that, on December 15, 2011, upon Harry's execution of his will and the Living Trust, defendants committed their last acts of malpractice. On May 1, 2017, which was within the six-year repose period in subsection (c), Michael timely filed his complaint against defendants. He asserts that the trial court's ruling that subsection (d) applied would have required him to file his suit on or before January 14, 2014 (*i.e.*, within two years of Harry's death). However, it was not until about 32 months later, on August 26, 2016—when the DHS issued its final decision, imposing a $234,561 penalty on Patricia—that Michael first learned of Patricia's injury. Because defendants created the Supplemental Trust through the Living Trust, it was considered not a third-party special-needs trust but instead a special-needs trust that was set up by Patricia. As a result, all asset transfers from Patricia or Harry were subject to a 60-month look-back period from when Patricia applied for medical assistance, on April 1, 2014. 89 Ill. Adm. Code 120.388(a) (2012). The penalty assessed against Patricia, Michael argues, resulted from asset transfers conducted during the look-back period. Thus, the penalty was the result of defendants' malpractice in creating the Supplemental Trust through the Living Trust instead of Harry's will.

¶ 24    Michael concedes that *Wackrow* and *Snyder* are controlling. In *Wackrow*, the defendant, in 2002, prepared an amendment to a living trust for the plaintiff's brother. Under the amendment, the brother gifted his residence, or $300,000, to the plaintiff. Later that year the brother died, and in 2003, the plaintiff made a claim against the estate for the property promised to her under the amendment. In 2003, the probate court denied her claim, and in 2004, the plaintiff filed a legal-malpractice claim against the defendant. The plaintiff alleged that, had the defendant conducted a property title search, it would have revealed that her brother did not own the property individually but that another trust owned it. The trial court granted the defendant's motion to dismiss the complaint as untimely under section 13-214.3(d). The supreme court agreed, holding first that the injury did not occur until the brother's death, because the plaintiff had alleged malpractice in the drafting of the amendment and the brother could have revoked or modified the amendment up until his death. *Wackrow*, 231 Ill. 2d at 425. Second, the court rejected the plaintiff's argument that the defendant rendered professional services to her as a third-party beneficiary and that the injury occurred when the administrator of her brother's estate denied her claim. *Id.* at 425-26. The court determined that the brother was the person to whom services were rendered and that accepting the plaintiff's argument "would eviscerate the repose provision" because "no claim against an estate would be barred until the death of each intended beneficiary of a will or trust. Such a result would be contrary to the legislative intent behind a statute of repose. *** A period of repose is not intended to expand the possibility of liability indefinitely." *Id.* Finally, the plaintiff argued that, because she filed her complaint within the two-year limitations period, neither the six-year repose period nor the subsection (d) repose period applied. *Id.* at 426-27. The court rejected her argument, holding that the section 13-214.3(d) "exception is not *in addition to* the two-year statute of limitations and the six-year statute of repose. Rather, the exception applies *instead of* the two-year statute of limitations and the six-year statute of repose." (Emphases in original.) *Id.* at 427. The plaintiff, the court determined, had two years to file suit, unless letters of office were issued or the will was admitted to probate. *Id.* at 427-28. Because letters were issued and the will was admitted to probate, she should have filed her complaint within the period for filing claims against the estate or contesting the validity of

the will (*i.e.*, six months, or no later than April 2003). She did not do so (she sued in 2004), and, thus, her complaint was untimely. *Id*. at 428-29.

¶ 25    In *Snyder*, 2011 IL 111052, ¶ 17, the supreme court held that subsection (c) applied where the defendant attorney, in 1997, prepared a deed conveying the marital home to the plaintiff and her husband as joint tenants with rights of survivorship. About 10 years later the husband died, and afterward, the plaintiff learned that, prior to the alleged malpractice, title to the home was held by a trustee of a land trust and her stepson was the sole beneficiary. *Id.* ¶¶ 1, 3. In 2008, the plaintiff sued the defendant, alleging legal malpractice (*id.* ¶ 2), specifically that the defendant negligently prepared a quitclaim deed that failed to convey the property to the plaintiff and her husband as joint tenants with rights of survivorship. The trial court granted the defendant's motion to dismiss the claim as untimely under the six-year statute of repose in section 13-214.3(c). *Id.* ¶ 5. The supreme court affirmed the trial court's judgment and held that the injury occurred when the deed was prepared and executed and that, thus, the two-year limitations period in subsection (b) applied. *Id.* ¶ 17. However, because the plaintiff did not file her claim until 10 years later, the six-year repose period in subsection (c), which began to run when the improperly recorded deed was mailed in 1997 (the last act of representation by the defendant), barred her claim. *Id.* ¶¶ 17-18. Thus, the plaintiff's suit (in 2008) was untimely. *Id.* ¶ 18. The court distinguished *Wackrow*, noting that the trust amendment in that case was intended to take effect only upon the plaintiff's brother's death, not during his lifetime. *Id.* ¶¶ 14-15. Thus, up until that time, "the plaintiff was to receive nothing and there was no injury while [her brother] was alive." *Id.* ¶ 15. Prior to his death, the brother could have revoked the trust amendment or modified it. *Id.* The court further noted that, in the case before it, the defendant's services were intended to have an immediate benefit during the husband's lifetime; specifically, if he had legal title to the house, the joint-tenancy deed would have conveyed a one-half undivided interest to the plaintiff. A right of survivorship is "a present interest that is created by the conveyance of the property into joint tenancy." *Id.* ¶ 14. The deed's failure to create a joint tenancy "caused a present injury that occurred at the time the quitclaim deed was prepared." *Id.* The court rejected the plaintiff's argument that there can be more than one injury for statute-of-limitations purposes, holding that the use of the phrase "the injury" indicated that only a single injury triggers the limitations period in subsection (d). *Id.* ¶¶ 16-17. Further, the court noted that subsection (d) does not apply when the injury occurs prior to the client's death. *Id.* ¶ 17. Thus, a second injury did not occur when, after her husband's death, the plaintiff did not receive ownership of the entire property interest as a surviving joint tenant. *Id.* "At most, this event was an outgrowth or consequence of the injury caused by the failure of the quitclaim deed to convey the property to [the husband] and [the] plaintiff as joint tenants." *Id.*

¶ 26    Here, Michael maintains that these cases warrant a finding that the injury occurred when the Living Trust was prepared and executed, not upon Harry's death. He argues that, whereas in *Wackrow* the brother could have revoked the trust amendment or changed the beneficiary prior to his death, so the injury did not occur until his death, here the injury occurred immediately. According to Michael, even if Harry could have identified the problem and created a new Supplemental Trust for Patricia via a testamentary trust in his will, Patricia still would have been deemed to have created the initial Supplemental Trust, and thus any asset transfers would still have been subjected to the look-back period. In Michael's view, there was no opportunity to rectify defendants' malpractice within the month between the execution of

Harry's documents and his death. Thus, he concludes, creating the Supplemental Trust through the Living Trust, which resulted in Patricia being deemed the creator of the Supplemental Trust, resulted in an injury that was not fixable prior to Harry's death or at any time.

¶ 27 We disagree with Michael's conclusory assertion that there was no opportunity to fix defendants' malpractice. Up until his death (and by the Living Trust's terms), Harry had the power to revoke or amend the Living Trust. Thus, Patricia's label as the creator of the Supplemental Trust could have been erased. Further, the Supplemental Trust was not even *funded* until Harry's death. Michael alleged in his complaint that, on or about the date Harry died, the assets in the Living Trust were distributed to the Supplemental Trust. No assessment of penalties was possible absent trust assets, which were not present until Harry's death. Indeed, Michael's complaint alleged that it was the transfer of the funds upon Harry's death, albeit from an incorrect vehicle, that resulted in the imposition of the penalty. Thus, the injury occurred upon Harry's death.

¶ 28 This conclusion is consistent with *Wackrow* and *Snyder*, where the supreme court approached the issue by looking at when the relevant documents became effective. In *Wackrow*, the amendment was intended to take effect only upon the client's death, and thus, subsection (d) applied. *Wackrow*, 231 Ill. 2d at 425. In *Snyder*, however, the court held that the provision did not apply, because the injury—the failure to realize that the property was in a land trust when the attorney prepared a quitclaim deed to it—occurred when the deed was delivered and recorded, because it became effective at that time. *Snyder*, 2011 IL 111052, ¶ 14. Here, the injury occurred when the Supplemental Trust could no longer be amended or revoked and was actually funded, both of which occurred upon Harry's death.

¶ 29 Next, Michael argues, without citing any authority, that subsection (d) is inapplicable because *Patricia* was one of defendants' clients and she is still alive. He notes that he alleged in his complaint that Harry retained defendants to prepare documents in connection with both his and Patricia's estate plan. Michael contends that it is illogical to think that defendants could properly prepare the necessary documents for Harry's estate plan without considering the needs of Patricia, who was the primary concern, especially considering that Harry was on his deathbed when he first retained and met with defendants. Further, he notes that Patricia's Alzheimer's disease had advanced to the point that she was considered disabled. The drafting of the Supplemental Trust, he urges, demonstrates that defendants were retained to prepare the documents for an estate plan for Harry *and* Patricia. Thus, in his view, Patricia has an individual claim against defendants, and section 13-214.3(d) is inapplicable because she is "the person for whom professional services were rendered" and she has not passed away. Defendants respond that Harry was the client and that Michael's complaint contains no allegation that Patricia was. They also point to her disability and note that, in his response to the motion to dismiss, Michael alleged that Patricia's disability precluded her from bringing the case on her own behalf.

¶ 30 We reject Michael's argument that subsection (d) cannot apply here. In *Riseborough*, 2014 IL 114271, a case addressing the subsection (c) six-year repose period, the supreme court held that section 13-214.3 does *not* require that the plaintiff be a client of the attorney who rendered the professional services. *Id.* ¶ 19. The court determined that the phrase " 'arising out of an act or omission in the performance of professional services' " in subsection (b) (and, we note, the similar reference to "the act or omission" in subsection (c)) is not limited to clients of the attorney. *Id.* "[U]nder the express language of the statute, it is the nature of the act or omission,

- 8 -

rather than the identity of the plaintiff, that determines whether the statute of repose applies to a claim brought against an attorney." *Id.* The court also noted that a contrary reading of the statute overlooks "that the repose period applies to claims '*arising out of* an act or omission in the performance of professional services.' " (Emphasis in original.) *Id.* ¶ 23 (quoting 735 ILCS 5/13-214.3(b), (c) (West 2008)). The "language indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services. There is no express limitation that the professional services must have been rendered to the plaintiff. Nor does the statute state or imply that it is restricted to claims for legal malpractice." *Id.* "The statute unambiguously applies to all claims brought against an attorney arising out of actions or omissions in the performance of professional services." *Id.*

¶ 31    *Riseborough* did not address section 13-214.3(d), which contains different language from that in subsections (b) and (c). The subsection (d) exception applies to situations where "the injury caused by the act or omission does not occur until *the death of the person for whom the professional services were rendered*." (Emphasis added.) 735 ILCS 5/13-214.3(d) (West 2016). The trigger for the exception is the death of the person for whom the professional services were rendered, who can only be the client. *Petersen v. Wallach*, 198 Ill. 2d 439, 447-48 (2002) ("section 13-214.3(d) was simply intended to create an exception to the six-year repose period for attorney malpractice actions where the alleged injury does not occur until the death of the client").

¶ 32    Generally, an attorney can be liable in negligence only to his or her client and not to nonclient third parties. *Pelham v. Griesheimer*, 92 Ill. 2d 13, 19 (1982). "[T]o establish a duty owed by the defendant attorney to the nonclient[,] the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." *Id.* at 20-21. In other words, the nonclient "must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Id.* at 21.

¶ 33    Here, Harry was the client. Michael failed to plead an attorney-client relationship between defendants and Patricia, failed to plead any duty to Patricia and breach thereof on defendants' part, and failed to plead that the primary purpose of defendants' services was to benefit Patricia. Defendants drafted two documents, the will and the Living Trust, both for Harry, and he executed both documents. Patricia is a beneficiary of one of the trusts created through the Living Trust. No documents were drafted for her. The Living Trust, which was revocable during Harry's lifetime, states that, during his life, it "shall be administered for [his] primary benefit." It is true that Michael alleged that Harry retained defendants to "prepare necessary documents in connection with his and his disabled wife's, Patricia A. O'Malley's, estate plan." However, in the portion of his complaint addressing the elements of a legal-malpractice claim, Michael alleged that there was an "attorney-client relationship between the Defendants and *Harry*," that defendants owed *Harry* a legal duty as a result, and that the duty "to *Harry*" was breached. (Emphases added.) The complaint contains no allegation that there was an attorney-client relationship between defendants and Patricia or that defendants breached any duty to her. Nor does it allege that the primary purpose or intent of seeking defendants' services was for Patricia's benefit.

¶ 34    Michael next argues that the injury did not occur until Patricia was assessed the penalty in September 2016. Michael relies on Justice Freeman's dissenting opinion in *Snyder*, wherein he criticized the majority's analysis of when an injury occurs in legal-malpractice cases, which he

- 9 -

believed precedent had established was when the plaintiff suffered a pecuniary injury. *Snyder*, 2011 IL 111052, ¶¶ 31-32 (Freeman, J., dissenting) (" 'For purposes of a legal malpractice action, a client is not considered to be injured unless and until he [or she] has suffered a loss for which he [or she] may seek monetary damages.' " (quoting *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005)); see also *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999) (same). In a similar vein, Michael contends that we should follow *Landau* and *Eastman*, upon which Justice Freeman relied (*Snyder*, 2011 IL 111052, ¶ 39), and ignore *Wackrow* and *Snyder*, which are "confusing and criticized." Under *Landau* and *Eastman*, Michael argues, Patricia was not injured until she suffered a loss for which she could seek monetary damages against defendants, *i.e.*, until August 26, 2016, when the DHS issued its decision imposing the penalty.

¶ 35        We reject Michael's argument. Justice Freeman's position in *Snyder* was in the minority. It is well settled that this court is bound to follow the supreme court's precedent, and "when our supreme court has declared law on any point, only [the supreme court] can modify or overrule its previous decisions, and all lower courts are bound to follow supreme court precedent until such precedent is changed by the supreme court." *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 734 (2006). Our resolution of this appeal must conform to the majority's view. *Snyder* and *Wackrow* addressed section 13-214.3 and are, thus, directly relevant to this appeal. The cases upon which Michael relies are not directly relevant to our analysis. Neither *Landau* nor *Eastman* addressed section 13-214.3, and therefore they are easily distinguishable. *Landau*, in which the plaintiff sued the law firm that defended it on an indemnity claim arising from a medical-malpractice case, contains a general discussion of the actual-damages element of a legal-malpractice claim. *Landau*, 216 Ill. 2d at 306-07 ("where an attorney has been engaged to defend an action and the action is lost through the attorney's negligence, the amount of the judgment suffered by the client is, generally, a proper element of recovery in a malpractice proceeding against the attorney"). *Eastman* addressed whether an employer's insurer that paid workers' compensation benefits to an injured employee could assert a lien against the employee's recovery in a legal-malpractice suit based on the attorney's failure to timely file a personal-injury action on behalf of the employee against an alleged third-party tortfeasor. *Eastman*, 188 Ill. 2d at 411-12 (holding that the insurer could not assert such a lien and addressing the concept of actual damages in a legal-malpractice suit). We decline Michael's request to ignore controlling supreme court precedent.

¶ 36        Michael argues next that section 13-214.3(c)'s six-year repose period applies. Under that section, regardless of Michael's knowledge of the cause of action, the claim would have been required to be filed within six years of defendants' malpractice. Harry executed the Living Trust and the will on December 15, 2011, and Michael filed his complaint on May 1, 2017, which was within the six-year repose period. However, as we determined above, the section 13-214.3(d) exception to the statute of repose applies. Where subsection (d) applies, it forecloses the application of subsection (c). *DeLuna*, 223 Ill. 2d at 74 (subsection (d) contains an exception to subsections (b) and (c)). In *Wackrow*, the supreme court determined that the subsection (d) exception "is not *in addition to* the two-year statute of limitations and the six-year statute of repose" but, rather, "applies *instead of* the two-year statute of limitations and the six-year statute of repose." (Emphases in original.) *Wackrow*, 231 Ill. 2d at 427.

¶ 37        Michael's final argument is that his complaint was timely under section 13-214.3(e), the disability provision. That section provides: "If *the person entitled to bring the action* is under

- 10 -

the age of majority or under other legal disability at the time the cause of action accrues, the period of limitations shall not begin to run until majority is attained or the disability is removed." (Emphasis added.) 735 ILCS 5/13-214.3(e) (West 2016). Michael argues that Patricia is the person entitled to bring the action and was, and still is, disabled. He notes that he alleged in his complaint that Patricia was disabled when defendants prepared the estate plan and that she is the injured party and, thus, the person entitled to bring the action. He further alleged that defendants were negligent in preparing the estate plan, which resulted in the imposition of a penalty on Patricia. Due to her disability, Michael argues, she is not able to bring the case on her own behalf, and she is entitled to avail herself of the tolling provision in section 13-214.3(e).

¶ 38     We disagree. The plaintiff in this case is Michael as trustee of the Supplemental Trust, not on Patricia's (individual) behalf. He is the only person who can bring an action on the trust's behalf, and he is not disabled. The power to bring an action on the trust's behalf is explicitly granted to him in the Living Trust, which states that the trustee has the power "[t]o litigate, compromise, settle, or abandon any claim or demand in favor of or against the trust." Further, under the law, "[a] written trust possesses a distinct legal existence that is recognized by statute (760 ILCS 5/4 *et seq.* (West 2000)) and can sue or be sued through its trustee in a representative capacity on behalf of the trust." *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005). Accordingly, Michael's argument fails.

¶ 39                                  III. CONCLUSION
¶ 40     For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 41     Affirmed.