2023 IL App (1st) 221110-U

THIRD DIVISION
June 21, 2023

No. 1-22-1110

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ALAN WU, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | |
| v. | ) | No. 2020 L 3620 |
| | ) | |
| GAINES & PULJIC LTD.; JOHN M. GAINES, LTD.; JOHN J. GAINES, III; and THOMAS KALLIES; | ) ) ) ) | |
| | ) | Honorable Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The trial court did not err in granting defendant's motion to dismiss due to the running of the statute of limitations and the statute of repose. Affirmed.

¶ 2     Plaintiff Alan Wu filed an amended complaint alleging legal malpractice against defendants Gaines & Puljic Ltd.; John M. Gaines, Ltd.; John J. Gaines, III (collectively, defendants); and Thomas Kallies.  Defendants subsequently filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), arguing that plaintiff's complaint was untimely under the statute of limitations.  The trial court agreed and

granted the motion. Plaintiff appeals, contending that (1) the court erred in failing to find a genuine issue of material fact, (2) the "discovery rule" should have tolled the statute of limitations, (3) the doctrine of equitable tolling should have applied here, and (4) the court erred in denying plaintiff leave to amend his complaint. We affirm.

¶ 3                                    BACKGROUND

¶ 4     On March 26, 2020, plaintiff filed a *pro se* complaint against Southern Cross Resources Group, Inc. (Southern Cross), the defendants, the Law Offices of Ivan Puljic, Ltd., and Ivica Puljic. This complaint alleged legal malpractice, common law fraud, and aiding and abetting. The gravamen of plaintiff's complaint was that defendants drafted various materials, including private placement memoranda (PPMs) and a subsequent Rescission Offer Rejection Agreement (the Rescission Offer Agreement), containing material misstatements of fact, which plaintiff relied upon and later suffered damages of nearly $550,000. Plaintiff further alleged that he was "a known third-party beneficiary" of defendants' legal services  The trial court dismissed this complaint for want of prosecution on March 23, 2021. The court subsequently granted plaintiff's motion to vacate the dismissal, and the case was reinstated.

¶ 5     On August 13, 2021, plaintiff (now represented by counsel) filed an amended complaint alleging legal malpractice (count I), common law fraud (count III), and aiding and abetting (count IV) against defendants.[1] The following facts are taken from plaintiff's amended complaint.

¶ 6     Michael A. Nasatir and Andrew L. Madenberg were the principals of Southern Cross, a Nevada corporation. As noted above, defendants prepared "written offering materials" for Southern Cross, including PPMs, that were provided to plaintiff between April 2012 and March

---

[1]  Plaintiff also alleged legal malpractice in a separate count (count II) against defendant Thomas Kallies, which plaintiff later voluntarily dismissed with prejudice. This claim is not before us.

2014. The offering materials represented that Nasatir and Madenberg personally invested millions of dollars of their own money and assets in Southern Cross, but in fact the principals invested nothing of "substantial value." The PPMs indicated that Southern Cross and its principals and affiliates owned or controlled assets valued between $26 million and $310 million, but in fact those valuations were "grossly misstated." In particular, a PPM that plaintiff received in 2013 stated that Southern Cross had coal reserves valued in excess of $20 million, but in fact their valuation was "grossly misrepresented in a variety of ways."

¶ 7    Plaintiff further alleged that defendants drafted the Rescission Offer Agreement and an accompanying revised PPM to correct prior misstatements and to "roll[] [p]laintiff's investment into a new entity with the same name, while offering [p]laintiff his money back." Plaintiff stated that Southern Cross conducted its rescission offer from March 15, 2014, through April 15, 2014. Plaintiff added that the revised PPM claimed that Southern Cross, Nasatir, and a company wholly owned by Nasatir collectively had over $200 million in assets, but in fact this claim was false. Plaintiff said that he relied upon this false information in deciding not to request his money back.

¶ 8    Based upon the PPMs that defendants drafted, plaintiff invested and loaned Southern Cross $546,177.26. Plaintiff stated that his investments amounted to $50,000 on June 6, 2013, $22,500 on January 2, 2014, and $304,947.66 on February 14, 2014. Plaintiff further stated that he loaned Southern Cross $150,000 on August 7, 2014 (excluding unpaid interest totaling $18,729.60), due to the misrepresentations in the revised PPM and Rescission Offer Agreement.

¶ 9    Plaintiff also alleged in count III (common law fraud) that defendants continued to conceal the fraud by misrepresenting the value of Southern Cross's assets "which prevented [p]laintiff from discovering the acts until the SEC [the United States Securities and Exchange Commission] filed [its] complaint on December 21, 2015."

¶ 10     On September 20, 2021, defendants filed a motion to dismiss plaintiff's amended complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)).  Defendants argued that, pursuant to section 13-214.3(b) of the Code (735 ILCS 5/13-214.3(b) (West 2020)), plaintiff's March 26, 2020, complaint was time-barred because plaintiff "conceded [in his complaint] that he knew, or should have known, of his harm when the SEC indicted Nasatir and Madenberg on December 21, 2015."  Defendants concluded that dismissal on these grounds was warranted under section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)).  Defendants further argued that the five-year statute of limitations for fraud claims under section 13-205 of the Code (735 ILCS 5/13-205 (West 2020)) would also render counts III and IV time-barred.  Defendants added that dismissal was warranted because plaintiff failed to exercise reasonable diligence in serving defendants in violation of Supreme Court Rule 103(b) (Ill. S. Ct. R. 103(b) (eff. July 1, 2007)).  Finally, defendants contended that plaintiff's claim of successor liability against defendant John J. Gaines, Ltd., must be dismissed because plaintiff failed to support his claim with facts, warranting dismissal under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)).

¶ 11     Defendants attached as an exhibit to their motion a complaint filed by the SEC in the federal district court on December 21, 2015 (the SEC complaint).  The SEC complaint alleged that Nasatir and Madenberg, both on behalf of Southern Cross, conducted a "fraudulent offering of securities." The SEC complaint further alleged that Southern Cross spent all of the money it raised from investors and that it had only a few assets available for liquidation.  The SEC complaint further stated, "Southern Cross' investors are likely to suffer a significant loss on their investments in the company."

¶ 12     In response, plaintiff disputed defendants' arguments in favor of dismissal except those pertaining to John J. Gaines, Ltd.  With respect to that defendant, plaintiff stated that (1) he does

not contest the dismissal of that defendant, (2) defendants' arguments were well-taken, and (3) John J. Gaines, Ltd., "should be dismissed with no prejudice to [p]laintiff's remaining claims." As to defendants' argument that the statute of repose further bars plaintiff's complaint, plaintiff stated that its "theory" was focused on the drafting of the Rescission Offer Agreement and revised PPM. In addition, plaintiff attached an affidavit to his response in which he stated, "[o]n March 27, 2014, I completed the Rescission Offer." He further stated that he became aware of the SEC complaint "a couple weeks after" it was made public, but he did not initially believe in its merits because he was "still stricken with disbelief that [I was] completely defrauded."

¶ 13    On May 6, 2022, the trial court issued an order stating that the matter was set for a status hearing on May 23, 2022, via the Zoom videoconferencing software platform. There is no report of proceedings for that hearing in the record on appeal.

¶ 14    On June 30, 2022, the trial court issued a written opinion on defendants' motion to dismiss. The court indicated that it "reviewed the pleadings and the arguments made by all parties." The court found that the two-year statute of limitations (735 ILCS 5/13-214.3 (West 2022)) barred all of plaintiff's claims, and it noted that plaintiff conceded that defendant John J. Gaines, Ltd., should be dismissed. The court then dismissed plaintiff's complaint with prejudice on counts I, III, and IV, and it further dismissed John J. Gaines, Ltd., as a defendant with prejudice. On July 26, 2022, the court issued an order noting that, pursuant to its order dismissing counts I, III, and IV with prejudice, and its order dismissing defendant Kallies (which comprised count II) with prejudice, all claims in this matter had been dismissed. The court then ordered all future court dates stricken. This timely appeal follows.

¶ 15                                ANALYSIS

¶ 16    On appeal, plaintiff first contends that the trial court erroneously granted defendants' motion to dismiss. Specifically, plaintiff argues that his complaint was not time-barred under the

statute of limitations or the statute of repose. Plaintiff further argues that the doctrine of equitable tolling should apply to the statute of limitations regarding his claims.

¶ 17     Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. 735 ILCS 5/2-619.1 (West 2020); *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. Here, plaintiff challenges the trial court's dismissal actions pursuant to the statute of limitations, which is an affirmative matter permitting dismissal under section 2-619(a)(5). See 735 ILCS 5/2-619(a)(5) (West 2020) (permitting dismissal of a cause of action if it was not "commenced within the time limited by law"). "The 'affirmative matter' asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials." *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997) (citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)).

¶ 18     "A motion for involuntary dismissal under section 2-619 admits all well-pleaded facts and reasonable inferences therefrom." *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Id.* When ruling on a section 2-619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* Finally, this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 22 (citing *Leonardi v. Loyola University of Chicago,* 168 Ill. 2d 83, 97 (1995)). We review *de novo* the dismissal of a cause of action under section 2-619. *Id.*

¶ 19     Section 13-214.3(b) of the Code sets forth the statute of limitations for legal malpractice actions. That section states in part as follows:

> "An action for damages based on tort, contract, or otherwise *** against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury." 735 ILCS 5/13-214.3(b) (West 2020).

In addition, with certain exceptions not relevant here, section 13-214.3(c) sets forth the period of repose for legal malpractice actions and provides in relevant part that "an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred." 735 ILCS 5/13-214.3(c) (West 2020).

¶ 20　　Plaintiff's complaint alleged, in essence, tortious conduct on the part of defendants regarding their provision of legal services and that he was a "known" (*i.e.*, intended) third-party beneficiary of those services. Section 13-214.3 of the Code thus applies. See 735 ILCS 5/13-214.3(b) (West 2020) (providing that actions against attorneys arising out of an act or omission in the performance of "professional services" must be commenced within two years from the time the plaintiff knew or reasonably should have known of the injury); see also *800 South Wells Commercial, LLC v. Horwood Marcus & Berk Chartered*, 2013 IL App (1st) 123660, ¶ 13 (holding that section 13-214.3(b) applies to "all claims against an attorney arising out of acts or omissions in the performance of professional services, and not just legal malpractice claims or claims brought against an attorney by a client"). The statute of limitations described in section 13-214.3(b) incorporates the "discovery rule," which "serves to toll the limitations period to the time when the plaintiff knows or reasonably should know of his or her injury." *Snyder*, 2011 IL 111052, ¶ 10.

¶ 21 The statute of limitations begins to run when a plaintiff " 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.' " *Morris v. Margulis*, 197 Ill. 2d 28, 36 (2001) (quoting *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)). Actual knowledge of the alleged malpractice, however, is not a necessary condition to trigger the running of the statute of limitations; instead, the statute begins to run when the allegedly injured party has only a " 'reasonable belief that the injury was caused by wrongful conduct,' " which then obliges the injured party to inquire further on that issue. *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶ 23 (quoting *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1997)). In addition, knowledge that an injury has been wrongfully caused does not mean knowledge of a specific defendant's negligent conduct or even knowledge of the existence of a cause of action. *Id.* A person knows or reasonably should know an injury is wrongfully caused when he possesses "sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.* At that point, the burden is then upon the injured party to inquire further to determine whether there is a cause of action. *Id.*

¶ 22 By contrast, a statute of repose, such as in section 13-214.3(c), gives effect to a policy different from that advanced by a period of limitations: it is intended to "terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his cause of action." *Maniscalco v. Porte Brown, LLC*, 2018 IL App (1st) 180716, ¶ 18 (quoting *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422 (1986)). The purpose of a statute of repose, therefore, curtails the potential " 'long tail' " of liability that could result from the discovery rule. *Snyder*, 2011 IL 111052, ¶ 10. A statute of repose is not tied to the existence of any injury; rather, it simply extinguishes liability after a fixed period of time. *Id.* In essence, the statute of repose begins running when a specific *event* occurs, "regardless of whether an action has accrued." *Id.*

(citing *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001)). The period of repose in a legal malpractice case begins to run "on the last date on which the attorney performs the work involved in the alleged negligence." *Id.* ¶ 18.

¶ 23 In this case, plaintiff filed his *pro se* complaint on March 26, 2020, but this complaint (as well as the amended complaint) alleged tortious actions on the part of defendants—namely, the preparation of multiple PPMs and the Rescission Offer Agreement containing numerous material misstatements of fact—that took place from around April 2012 (when Nasatir obtained control of Southern Cross) until March 15, 2014 (when Southern Cross first extended its rescission offer). In addition, plaintiff alleged that he became aware of defendants' alleged wrongful acts when the SEC filed its complaint against Southern Cross, Nasatir, and Madenberg on December 21, 2015. Finally, plaintiff's affidavit in his response to defendants' motion to dismiss freely admits that he became aware of the SEC complaint "a couple weeks after" it was made public but that he was "stricken with disbelief" that he had been "completely defrauded." On these facts, the filing date of plaintiff's complaint (March 26, 2020) was well beyond the two-year statute of limitations prescribed in section 13-214.3(b). This is true even if we assume that plaintiff became aware of a potential cause of action around January 4, 2016, or "a couple weeks after" the SEC filed its complaint on December 21, 2015.

¶ 24 Although plaintiff argues that his complaint is not time-barred because he did not discover that he had a potential claim against defendants until he conferred with counsel in February 2020, that is not the standard. When a plaintiff knows or reasonably should know of a wrongfully caused injury, the statute of limitations begins to run. See *Morris*, 197 Ill. 2d at 36. A plaintiff need not have knowledge of a specific defendant's negligent conduct or even the existence of a cause of action. *Id.* The facts here indicate that plaintiff had sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct was

involved. See *id.* Plaintiff then had the burden to inquire further to determine whether there was a viable claim (see *id.*), but he did not do so until several years had passed, rendering any potential claim time-barred. The trial court therefore properly dismissed this claim.

¶ 25 In addition, plaintiff's claims are time-barred under the statute of repose. Plaintiff's complaint alleges that defendants drafted various documents, including a revised PPM and Rescission Offer Agreement, and plaintiff alleged the rescission offer took place from March 15, 2014 through April 15, 2014. Impliedly, defendants would have provided those documents at the very latest when the rescission offer began, so the statute of repose would therefore have begun on March 15, 2014, the latest date that defendants would have issued those documents. See *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 96-97 (2005) (holding that the period of repose began to run from the date when the defendant "last performed the work involved in the alleged negligence and sent the final work product," an improperly recorded deed, to the plaintiff) (citing *Fricka v. Bauer*, 309 Ill. App. 3d 82, 86-87 (1999)). Plaintiff's complaint, however, was filed on March 26, 2020, which was after the six-year statute of repose had run.

¶ 26 Plaintiff's assertion that he "completed" the rescission offer on March 27, 2014, is immaterial because, again, March 15, 2014, was the last date on which defendants performed the work involved in the alleged negligence. See *Snyder*, 2011 IL 111052, ¶ 18; *Trogi*, 362 Ill. App. 3d at 96-97. On this additional basis, we can affirm the trial court's granting of defendants' motion to dismiss. Although this was not the basis of the trial court's granting of defendants' motion, we may nonetheless affirm the judgment of the trial court on any grounds in the record, regardless of whether the court relied on those grounds or whether its reasoning was correct. See *Vulpitta*, 2016 IL App (1st) 152203, ¶ 22 (citing *Leonardi,* 168 Ill. 2d at 97).

¶ 27    Nonetheless, plaintiff cites multiple cases in support of his contention that the statute of limitations should have been tolled despite his concession that he became aware of a potential claim no later than January 4, 2016. Plaintiff's reliance upon those cases, however, is misplaced.

¶ 28    In *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, the plaintiff was aware that her injury might have been wrongfully caused by one source but was "unaware that it could have been caused by another source and, in fact, could not be aware of that source because *the causal link was as yet unknown to science*." (Emphasis added.) *Id.* ¶ 19. The trial court granted the defendants' motions to dismiss the plaintiff's complaint as untimely, and we reversed. *Id.* ¶¶ 14, 57-58. We held that there was "no question that [the] plaintiff could not have known of any potential *** cause of action against the pain pump manufacturers while the causal link between her injury and the pain pump used upon her was not scientifically discoverable." *Id.* ¶ 29.

¶ 29    In *Young v. McKiegue*, 303 Ill. App. 3d 380 (1999), plaintiff filed a complaint for wrongful death against various defendants alleging malpractice in failing to diagnose and properly treat the decedent's cardiac condition. *Id.* at 385. On appeal from the trial court's granting of the defendants' motions to dismiss, we held that the statute of limitations is not triggered "during that period in which the party is attempting to discover whether her injury is wrongfully caused." *Id.* at 390. The *Young* court further held that the statute of limitations was tolled until the plaintiff received the first of two expert reports, which stated that the physicians caring for the decedent deviated from the standard of care. *Id.* at 389. At that point, she "knew or reasonably should have known *** that her husband's death was wrongfully caused" and was obligated to "investigate further to determine whether actionable conduct was involved." *Id.*

¶ 30    Here, plaintiff's injury was not scientifically undiscoverable. In addition, plaintiff freely conceded that he was no longer attempting to discover whether his injury was wrongfully caused: he knew of his injury when the SEC filed its complaint in December 2015 (or at the latest, a "couple

[of] weeks" thereafter). *Mitsias* and *Young* are therefore distinguishable. Plaintiff's admission in his affidavits further distinguishes *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240 (1994), and *Racquet v. Grant*, 318 Ill. App. 3d 831, 836 (2000). See *Jackson Jordan*, 158 Ill. 2d at 250 (noting that there were "several points in time" when the plaintiff may have had sufficient information to conclude that its attorneys were negligent); *Racquet*, 318 Ill. App. 3d at 836 (holding that there was a factual issue precluding summary judgment as to when the plaintiffs "actually knew facts that would put them on notice that they were injured *and* that the injury was wrongfully caused").

¶ 31    Plaintiff further argues that equitable estoppel should have tolled the running of the statute of limitations. Defendants respond that this issue is forfeited.

¶ 32    To preserve an issue for review, "[*b*]*oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Alteration and emphases in the original.)  *Batson v. Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 42 (quoting *People v. Enoch,* 122 Ill. 2d 176, 186 (1988)). "A trial judge should have an opportunity to appraise the errors which are asserted to have taken place. It is unfair to charge him with errors in a reviewing court without having brought them to his attention so that a new trial could have been granted if he found it advisable." *Perez v. Baltimore & Ohio R.R. Co.,* 24 Ill.App.2d 204, 210 (1960). Here, however, the trial court was denied any opportunity to consider plaintiff's contention that he should be allowed the opportunity to amend his complaint to avoid dismissal under the statutes of limitation or repose. Accordingly, we reject plaintiff's claim of error on this point, because he failed to preserve this issue for review.

¶ 33    Moreover, forfeiture aside, plaintiff's claim is meritless. Equitable tolling of a statute of limitations "may" be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has been prevented from asserting his rights in some extraordinary way (*i.e.*, due to

extraordinary barriers), or (3) the plaintiff has mistakenly asserted his or her rights in the wrong forum. *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000). Extraordinary barriers include the following: a legal disability, an irredeemable lack of information, or "situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008). Plaintiff here argues he was prevented from asserting his rights because he could not learn the identity of proper defendants through the exercise of due diligence. We disagree. Plaintiff admitted that he knew of the SEC's complaint in December 2015 (or at the latest, a "couple weeks" thereafter), but he nonetheless made no effort to investigate his claim until well after the statute of limitations had run, perhaps because he was "stricken with disbelief" that he had been "completely" defrauded. Although that reaction is understandable, it is not a basis for applying a doctrine that is "rarely" applied. See *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 33.

¶ 34    Finally, plaintiff contends that the trial court erred in denying him the opportunity to further amend his complaint pursuant to section 2-616 of the Code (735 ILCS 5/2-616 (West 2020)). Plaintiff argues that, had the court allowed him leave to amend, he would have provided a second amended complaint that "would have more readily articulated why the statute of limitations did not begin to run *** until February 2020." No copy of the proposed second amended complaint is in the record. Defendants respond that this claim is also forfeited for failure to raise it before the trial court, plaintiff's argument is undeveloped, and it does not cite relevant authority. In reply, plaintiff does not directly address defendants' claim that he did not seek leave to amend below.

¶ 35    Besides the fact that the record on appeal contains no copy of a motion for leave to amend (including a proposed second amended complaint), plaintiff has failed to provide either a report of proceedings or an acceptable substitute for the hearing on defendants' combined motion. Supreme Court Rules 321 and 324 require an appellant to provide a complete record on appeal, including a

13

certified copy of the report of proceedings. See Ill. S. Ct. R. 321 (eff. Feb. 1, 1994); Ill. S. Ct. R. 324 (eff. July 1, 2017). If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided in Rule 323. See Ill. S. Ct. R. 323 (eff. July 1, 2017). The burden of providing a sufficient record on appeal rests with the appellant (here, plaintiff). *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id.* at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.*

¶ 36 Here, there is nothing in the common law record (nor even in the statement of facts in plaintiff's brief) to indicate plaintiff filed a motion to reconsider addressing leave to amend or that such a motion had been ruled upon. In addition, there is no transcript of the hearing on defendants' motion to dismiss. Without this record, plaintiff's claim that the court improperly denied him the opportunity to further amend his complaint—and what precisely his proposed second amended complaint would contain—is merely speculative. In the absence of a transcript of the hearing and a proposed second amended complaint, we cannot determine whether the trial court erred. We must therefore presume the court acted in conformity with the law and with a sufficient factual basis for its findings. See *id.*; *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56 ("We cannot divine the trial court's reasoning in denying defendant's motion and cannot determine whether that decision constituted an abuse of discretion."); see also *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985) (holding that, when the record is incomplete, a reviewing court must indulge "every reasonable presumption" in favor of the judgment that is appealed, "including that the trial court ruled or acted correctly"). On this basis alone, we may affirm the judgment of the trial court.

¶ 37    Moreover, as with his equitable tolling argument, his claim fails notwithstanding forfeiture. Among the factors a trial court should consider in determining whether to allow an amendment to the pleadings pursuant to section 2-616(a) of the Code (735 ILCS 5/2-616(a) (West 2020)) is whether "the proposed amendment would cure the defective pleading." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).  As discussed, plaintiff clearly admitted in his pleadings that he was aware of defendants' alleged wrongful acts when the SEC filed its complaint on December 21, 2015, and even taking as true that plaintiff actually became aware of the SEC complaint "a couple weeks after" it was made public (sometime around January 4, 2015), his *pro se* complaint was filed on March 26, 2020, which was far outside of the two-year statute of limitations.  In addition, defendants' work product was provided at the latest on March 15, 2014, which would then additionally bar his complaint under the statute of repose.  Plaintiff has not indicated how an amendment could avoid those facts, both of which fatally undermine his arguments.  Plaintiff's final claim of error is therefore without merit.

¶ 38                                    CONCLUSION

¶ 39    The trial court did not err in granting defendant's motion to dismiss due to the running of the statute of limitations.  Accordingly, we affirm the judgment of the circuit court.

¶ 40    Affirmed.